**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RICHARD O. MANNING, M.D.;
RALEIGH WOMEN'S HEALTH
ORGANIZATION, INCORPORATED; TAKEY
CRIST, M.D., on their own behalf
and on behalf of their minor
patients,
<u>Plaintiffs-Appellants,</u>

v.

JAMES B. HUNT, JR., Governor of the
State of North Carolina, in his
official capacity; RONALD L. MOORE,
District Attorney of Buncombe

County, in his official capacity;                    No. 97-1126
PETER S. GILCHRIST, III,
Mecklenburg County District
Attorney, in his official capacity; C.
COLON WILLOUGHBY, JR., Wake
County District Attorney, in his
official capacity; WILLIAM H.
ANDREWS, Onslow County District
Attorney, in his official capacity,
<u>Defendants-Appellees,</u>

NORTH CAROLINA RIGHT  TO LIFE,
INCORPORATED,
<u>Amicus Curiae.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-95-229-1-T)

Argued: April 10, 1997

Decided: July 11, 1997

Before MURNAGHAN and WILLIAMS, Circuit Judges, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Clarke wrote the opinion, in which Judge Murnaghan and Judge Williams joined.

_____

## COUNSEL

**ARGUED:** Deborah Koff Ross, ACLU-NC LEGAL FOUNDATION, Raleigh, North Carolina, for Appellants. Grady L. Balentine, Jr., Assistant Attorney General, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Ellen W. Gerber, High Point, North Carolina; C. Frank Goldsmith, Marion, North Carolina; Catherine Weiss, Louise Melling, Talcott Camp, Reproductive Freedom Project, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Appellants. Michael F. Easley, North Carolina Attorney General, Raleigh, North Carolina for Appellees. Paul Stam, Jr., Theodore S. Danchi, Apex, North Carolina, for Amicus Curiae.

_____

## OPINION

CLARKE, Senior District Judge:

This case comes before the Court on appeal of the District Court's denial of a preliminary injunction enjoining enforcement of North Carolina's Act to Require Parental or Judicial Consent for an Unemancipated Minor's Abortion, N.C. Gen. Stat. § 90-21.6 to .10 ("the Act"). In their complaint, Appellants challenge the Act as violating various provisions of the U.S. Constitution on its face. On November 30, 1995, the United States District Court for the Western District of North Carolina entered a preliminary injunction partially enjoining enforcement of the Act. On May 22, 1996, this Court vacated the District Court's order in its entirety and remanded for further proceedings. Appellants then renewed their motion for a preliminary

2

injunction. That motion was denied by the District Court on December 18, 1996. Manning v. Hunt, No. 1:95cv229 (W.D.N.C. Dec. 18, 1996). Appellants now appeal the District Court's decision. For the reasons set forth below, this Court affirms the District Court's opinion.

I.

A.

Under the terms of the Act, an unemancipated minor may not obtain an abortion unless the physician obtains the written consent of the minor and:

> (1) A parent with legal custody of the minor, or

> (2) The legal guardian or legal custodian of the minor, or,

> (3) A parent with whom the minor is living, or

> (4) A grandparent with whom the minor has been living for at least six months immediately preceding the date of the minor's written consent.

N.C. Gen. Stat. § 90-21.7(a) (Michie 1996). These requirements do not apply when, in the physician's best judgment, it is determined that a medical emergency exists which requires an immediate abortion. Id. § 90-21.9.

The Act contains a judicial bypass of these consent requirements. Under the bypass procedure, the minor may petition a state district court for a waiver of the above consent requirement if the persons empowered to give consent refuse to do so or are unavailable within a reasonable time or manner, or if the minor elects not to seek the required consent. Id. § 90-21.7(b). The minor may proceed on her own or through a guardian ad litem, and the state district court is required to advise her of her right to counsel and appoint counsel if she so requests. Id § 90-21.8(c). The Act requires court proceedings regarding a petition for the waiver of parental consent be confidential

3

and be given precedence over other matters before the court. Id. § 90-21.8(d). If the minor so requests, no notice will be served upon her parents, guardian, or custodian regarding the petition. Id. § 90-21.8(f). Under no circumstances is the state district court to wait more than seven days from the time of the petition's filing before holding its hearing and ruling on the petition unless the minor agrees to an extension of time. Id. During the hearing, the state district court is required to hear evidence regarding emotional development, maturity, intellect, alternatives to the abortion, and any other evidence deemed useful. Id. The record of the evidence must be maintained in a confidential manner. Id. § 90-21.8(f). The state district court is required to waive the consent requirement if it finds that (1) the minor is mature and well-informed enough to make the decision to abort her pregnancy on her own, (2) it would be in the minor's best interest to waive the consent requirement, or (3) the minor is a victim of rape or incest. Id. § 90-21.8(e). Pursuant to rules enacted by the North Carolina Supreme Court, the state district court must issue its ruling at the conclusion of the hearing.

If the court finds that the minor has been the victim of rape or incest, it is required to report this finding to the Director of North Carolina's Department of Social Services. Id. § 90-21.8(f). This requirement is consistent with another North Carolina statute which places on all persons a duty to report child abuse, neglect, or death due to maltreatment. Id. § 7A-543. All information received by the Department of Social Services is to be held in the strictest confidence. Id. § 7A-544. Of course, the Department's investigation may well bring the allegations of rape or incest to the attention of the minor's parents.

The Act provides that the minor may appeal a denial of her petition by the state district court to the superior court. Id. § 90-21.8(h). The minor must file the appeal within 24 hours from the date of the issuance of the state district court's order. Id. This hearing is de novo and, by statute, is to be held as soon as possible within seven days of the filing of the appeal. Id. The North Carolina Supreme Court has implemented rules requiring that the superior court issue its decision within 48 hours of its hearing. Further appeals may be made to the North Carolina Court of Appeals and Supreme Court, but the Act contains no provisions governing such appeals. In the only state court opinion regarding the Act that has come to our attention, the North Carolina

4

Court of Appeals has ruled that the minor does not have an appeal as of right to the appellate courts beyond the superior court, but may petition for a writ of certiorari, which the appellate courts must review promptly under standard procedures. In re Doe, ___ S.E.2d ___, ___, No. COA 97-323 (N.C. Ct. App. June 3, 1997).

Any person who, with knowledge or with reckless disregard as to whether the patient is an unemancipated minor, intentionally performs an abortion on an unemancipated minor and who intentionally or knowingly fails to conform to the Act's requirements is guilty of a class 1 misdemeanor. Id. § 90-21.10.

B.

Plaintiffs-Appellants are physicians, who practice in North Carolina, and the Raleigh Women's Health Organization, Inc. Dr. Richard O. Manning is medical director of the Western Carolina Medical Clinic in Asheville, North Carolina, and of Family Reproductive Health in Charlotte, North Carolina. Dr. Manning states that many of his patients are minor women who need abortions. Dr. Takey Crist is a physician practicing obstetrics and gynecology in Onslow County, North Carolina, and claims that he routinely performs abortions on unemancipated minors. The Raleigh Women's Health Organization, Inc., located in Wake County, North Carolina, provides health and educational services to women, including abortions through the twentieth week of pregnancy. Many of its patients are unemancipated minors seeking abortions who cannot obtain parental consent or involve their parents in their decision to have an abortion. Defendants-Appellees are officials within the government of North Carolina and are sued in their official capacities. These officials are bound to carry out the laws of North Carolina, including the Act which is the subject of this litigation and its provisions for prosecution of anyone who performs an abortion which does not comply with the Act's requirements.

Appellants filed this facial challenge -- in which the Appellants argue that the Act is unconstitutional based on its language and the language of the rules accompanying it without consideration of the actual application of the Act -- seeking preliminary and permanent injunctive relief enjoining enforcement of the Act on November 2,

5

1995. Appellants claim that the Act violates the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution. The Act, as argued in their complaint, imposes an undue burden on the right of a pregnant unemancipated minor to an abortion by (1) failing to clearly define the term "parent with custody," (2) failing to provide an adequate, expeditious, and confidential judicial bypass for pregnant minors who appeal a denial of her petition to the appellate courts of North Carolina, (3) requiring that a pregnant minor file her appeal of a denial of her petition by the state district court to the superior court within 24 hours of the state district court's decision, (4) requiring that the hearing before the superior court be held de novo, (5) requiring that the minor state affirmatively that she does not want her parents, custodian, or guardian to be informed of her decision to have an abortion, and (6) requiring that a judge who finds that the minor was the victim of rape or incest report such finding to the Department of Social Services ("reporting requirement").

In its first opinion on Appellants' motion for a preliminary injunction, the District Court below partially granted the motion and enjoined enforcement of the Act's reporting requirement. Both parties appealed the District Court's decision. A panel of this Court found that the District Court had improperly applied this Circuit's prevailing caselaw with regard to the grant or denial of a preliminary injunction, vacated the District Court's order, and remanded the case for proceedings consistent with its opinion. See Manning v. Hunt, Nos. 95-3181, 95-3182 (4th Cir. May 22, 1996). Appellants again moved the District Court for a preliminary injunction against enforcement of the Act.

By Order dated December 18, 1996, Manning v. Hunt, No. 1:95cv229 (W.D.N.C. Dec. 18, 1996), the District Court denied Appellants' motion in its entirety and refused to enjoin enforcement of the Act. The District Court first found that Appellants had standing to challenge the Act in federal court. The District Court then reached the issue of the preliminary injunction and found that the Appellants had failed to make the required showing of likelihood of irreparable harm to the plaintiffs, that whatever likelihood of harm to the plaintiffs might exist was outweighed by the likelihood of harm to the state of North Carolina, that Appellants were not likely to succeed on the merits, and that the public interest was advanced by a denial of injunctive relief.

6

Appellants now appeal the District Court's order of December 18, 1996. The sole issue decided by the District Court and which is now pending before this Court is whether a preliminary injunction should issue barring enforcement of the Act. Appellants claim the District Court abused its discretion by failing to hold that the balance of hardships favors them, by failing to hold that they are likely to succeed on the merits in their challenge that the Act's judicial bypass provision is unconstitutional on its face, by failing to hold that enjoining the Act is in the public interest, and because the District Court erroneously interpreted the Act's medical emergency exception to require a court order before a minor may obtain an emergency abortion.

II.

Abortion is recognized as a fundamental right protected by the Due Process Clause of the Fourteenth Amendment.[1] Roe v. Wade, 410 U.S. 113, 155 (1973). Before the Court reaches the District Court's decision regarding the preliminary injunction, it is useful to briefly review the Supreme Court's opinions with regard to abortion in general and parental consent statutes in particular.

A.

In Roe, the Supreme Court overturned a Texas statute which prohibited abortions unless an abortion was necessary to save the life of the mother. Writing for a majority of the Court, Justice Blackmun found that the right of personal privacy includes the right to abortion, but that the right "is not unqualified and must be considered against important state interests in regulation." 410 U.S. at 154. The Court determined that because abortion is a fundamental right, state abortion regulations should be analyzed under the strict scrutiny standard of review and are therefore valid only if the regulation could be justified by a compelling state interest and if the regulation was narrowly drawn to express only that legitimate state interest. See id. at 155. The Court found that the state interests in preserving and protecting the health of the pregnant woman and in protecting potential human life

_____

[1] The Fourteenth Amendment states in pertinent part: ". . . nor shall any State deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV.

grow in substantiality as the woman approaches term, becoming compelling at some point in the pregnancy. Id. at 162-63. Roe then laid out the so-called "trimester" test, in which the Court found that during the first trimester, the decision to abort must be left to the wishes of the pregnant woman and the judgment of the woman's physician; that during the time after the first trimester but before viability of the fetus, the state could regulate the abortion decision in ways reasonably related to maternal health; and that after viability, the state could regulate or proscribe abortion except when necessary to preserve the life or health of the mother. Id. at 164-65.

Subsequent to Roe, the Supreme Court's caselaw has reflected the troublesome nature of the issues involved. The central holding of Roe -- that a woman has a fundamental right to choose to have an abortion -- has not eroded. Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 857-58 (1992) (plurality opinion). However, there have been very few clear majorities applying any one standard when determining the constitutionality of a state's regulation of abortion. Review of these cases is unnecessary for our decision here; it suffices to say that since Roe, no one standard of review has secured a solid majority of the Court.

The trend does appear to be a move away from the strict scrutiny standard toward the so-called "undue burden" standard of review. In Casey, a majority of the Court reaffirmed Roe's essential holding. Casey, 505 U.S. at 871 (plurality opinion of O'Connor, J., joined by Kennedy, J., and Souter, J.); id. at 912-13 (Stevens, J., concurring); id. at 923 (Blackmun, J., concurring). The plurality opinion of Justice O'Connor, however, found the trimester analysis of Roe to be unworkable and unnecessary to its essential holding. Id. at 872. Further, the plurality emphasized that the essential holding of Roe was not a one-sided recognition of an absolute right to an abortion. The plurality stated that "[t]hough the woman has a right to choose to terminate or continue her pregnancy before viability, it does not at all follow that the State is prohibited from taking steps to ensure that this choice is thoughtful and informed." Id. at 872 (plurality opinion). Thus, it would be an overstatement to describe the right as one "to decide whether to have an abortion `without interference from the State.'" Id. at 875 (plurality opinion) (quoting Planned Parenthood of Central Mo. v. Danforth, 428 U.S. 52, 61 (1976)).

8

Instead, the plurality defined the right to abortion as "a right `to be free from governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.'" Id. (plurality opinion) (quoting Eisenstadt v. Baird, 405 U.S. 438, 453 (1972)). Accordingly, the Court found that the "undue burden standard of review is the appropriate means of reconciling the State's interest with the woman's constitutionally protected liberty." Id. at 876 (plurality opinion). The plurality defined the undue burden standard as follows:

> A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus. A statute with this purpose is invalid because the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it. And a statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends. . . . In our considered judgment, an undue burden is an unconstitutional burden. Understood another way, we answer the question, left open in previous opinions discussing the undue burden formulation, whether a law designed to further the State's interest in fetal life which imposes an undue burden on the woman's decision before fetal viability could be constitutional. The answer is no.

Id. at 877 (plurality opinion) (citations omitted).

The difficulty presented to lower federal courts following Casey lies in the fact that only three justices -- Justices O'Connor, Kennedy, and Souter -- have specifically adopted this undue burden standard. Other courts, however, have applied the undue burden standard in cases arising after Casey.2  We deem it proper to follow the trend

_____

**2** The District Court below also correctly recognized that courts in other jurisdictions are applying the undue burden standard. See Manning, No.

9

clearly set by other courts and the District Court below. The inquiry in this case is whether the North Carolina Act places an undue burden on an unemancipated minor who wishes an abortion.

B.

Unlike its trend in general abortion jurisprudence, the Supreme Court has defined rather specific guidelines to be followed by states when enacting, and by federal courts when reviewing, statutes requiring parental consent before a minor may obtain an abortion. The Court now briefly reviews these guidelines and the rationales relied upon in their formulation.

The Supreme Court has consistently treated the issue of abortion for unemancipated minors differently from that of abortion for adults. In addition to the personal and state interests at stake when an adult seeks an abortion is the added fact that "the status of minors under the

_____

1:95cv229, slip op. at 9-10 n.4 (citing Rappa v. New Castle County, 18 F.3d 1043, 1057 (3d Cir. 1994) ("[A]ny time a regulation constituted an undue burden, Justice O'Connor and those Justices who favored more severe tests would form a majority to strike down the statute. Any time a regulation did not constitute an undue burden, Justice O'Connor and those Justices who favored rational basis review would form a majority to uphold the statute. Thus, the undue burden test had become the law of the land even before Casey."); Armstrong v. Mazurek, 94 F.3d 566, 567 (9th Cir. 1996) (holding that in ruling on a motion for a preliminary injunction to enjoin enforcement of an abortion statute, district court properly applied the "undue burden" test set forth in Casey); Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452, 1456 n.7, 1457 (8th Cir. 1995), cert. denied, Janklow v. Planned Parenthood, Sioux Falls Clinic, ___ U.S. ___, 116 S.Ct. 1582 (1996) (discussing the division among the Court in Casey and noting that the undue burden standard appears to be the "lowest common denominator"); Jane L. v. Bangerter, 61 F.3d 1493, 1503-04 (10th Cir. 1995), rev'd on other grounds sub nom., Leavitt v. Jane L., ___ U.S. ___, 116 S.Ct. 2068 (1996) ("Casey admittedly replaces Roe's strict scrutiny with an `undue burden' analysis . . . ."); Barnes v. Mississippi, 992 F.2d 1335, 1338 (5th Cir.), cert. denied, 510 U.S. 976 (1993) (citing Casey as formulating the "undue burden standard for abortion regulations")).

10

law is unique in many respects." <u>Bellotti v. Baird</u>, 443 U.S. 622, 633 (1979). This status can be traced to the "unique role in our society of the family, the institution by which `we inculcate and pass down many of our most cherished values, moral and cultural,'" a role which "requires that constitutional principles be applied with sensitivity and flexibility to the special needs of parents and children." <u>Id.</u> at 634 (quoting <u>Moore v. East Cleveland</u>, 431 U.S. 494, 503-04 (1977) (plurality opinion)). Thus, when faced with the exercise of fundamental rights by minors, courts must balance two factors which do not apply to adults. On the one hand, "[a] child, merely on account of [her] minority, is not beyond the protection of the Constitution." <u>Id.</u> at 633. On the other hand, there are reasons which justify "the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing." <u>Id.</u> at 634; <u>see also Stanford v. Kentucky</u>, 492 U.S. 361, 395 (1988) (Brennan, J., dissenting) ("[M]inors are treated differently from adults in our laws, which reflects the simple truth derived from communal experience that juveniles as a class have not the level of maturation and responsibility that we presume in adults and consider desirable for full participation in the rights and duties of modern life."); <u>Thompson v. Oklahoma</u>, 487 U.S. 815, 835 (1987) ("Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult.").

In <u>Danforth</u>, <u>supra</u>, the Supreme Court ruled that a blanket parental consent statute was unconstitutional because it gave parents "absolute power to overrule a determination . . . to terminate the [minor's] pregnancy." 428 U.S. at 75. The North Carolina Act does not create a parental veto over the minor's decision to obtain an abortion. The Act provides a judicial bypass in which the minor can avoid the consent requirement and any need to notify her parents of her decision by obtaining a court order allowing the abortion. The majority of Appellants' challenge attacks the Act's judicial bypass of its consent requirement.

With the interests discussed previously in mind, the Supreme Court first addressed the requirements of a valid judicial bypass in <u>Bellotti</u>,

11

supra. There, the Court struck down a Massachusetts statute which required parental consent or a court order upon a finding of good cause shown before a minor could obtain an abortion. The plurality opinion recognized that the states "validly may limit the freedom of children to choose for themselves in the making of important, affirmative choices with potentially serious consequences." Bellotti, 443 U.S. at 635. Further, the plurality recognized that states often protect "youth from adverse governmental action and from their own immaturity by requiring parental consent to or involvement in important decisions by minors." Id. at 637. At the same time, however, the plurality stated that "[t]he need to preserve the constitutional right and the unique nature of the abortion decision, especially when made by a minor, require a State to act with particular sensitivity when it legislates to foster parental involvement in this matter." Id. at 642.

The plurality then set out the constitutional requirements for a valid parental consent statute. If a state requires an unemancipated pregnant minor to obtain the consent of a parent, it "also must provide an alternative procedure whereby authorization for the abortion can be obtained." Id. at 643 (footnote omitted). Such a proceeding must comply with the following requirements:

> A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests. The proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained.

Id. at 643-44 (footnote omitted). Because the Massachusetts Supreme Court had interpreted the statute to require parental consent before a minor could obtain a court order, the statute was found to be too restrictive and was struck down. Id. at 646-47; see also id. at 655-56 (Stevens, J., concurring in judgment).

12

The rationales behind Bellotti have been adopted repeatedly by subsequent Supreme Court majorities. See e.g. Hodgson v. Minnesota, 497 U.S. 417, 461 (1990) (O'Connor, J., concurring); id. at 497-98 (Kennedy, J., joined by Rehnquist, C.J., White, J., and Scalia, J., concurring); Planned Parenthood Ass'n of Kansas City, Mo, Inc. v. Ashcroft, 462 U.S. 476, 491-92 (1983) (opinion of Powell, J., joined by Burger, C.J.); id. at 504 (O'Connor, J., joined by White, J., and Rehnquist, J., concurring); H.L. v. Matheson, 450 U.S. 398, 408-12 (1980). The Bellotti requirements for a valid judicial bypass were specifically adopted by a majority of the Supreme Court in Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 511-13 (1990) ("Akron II").

By now, then, it is clear that in order to survive constitutional scrutiny, the judicial bypass of a parental consent statute must comply with a four-part test based on the plurality's holding in Bellotti. Such a statute must:

> (i) allow the minor to bypass the consent requirement if she establishes that she is mature enough and well enough informed to make the abortion decision independently; (ii) allow the minor to bypass the consent requirement if she establishes that the abortion would be in her best interests; (iii) ensure the minor's anonymity; and (iv) provide for expeditious bypass procedures.

Lambert v. Wicklund, ___ U.S. ___, ___, 117 S.Ct. 1169, 1171 (1997) (per curiam) (citing Bellotti, 443 U.S. at 643-44 (plurality opinion); Akron II, 497 U.S. at 511-13). Because of the Supreme Court's strong reliance on these requirements, a statute which is addressed by and complies with the Bellotti standards cannot be said to be an undue burden. Accordingly, when reviewing the merits of a parental consent statute, our focus is on the compliance of the statute with the four Bellotti standards stated above. If the Bellotti requirements do not address the state regulation, the court then turns to general abortion caselaw and determines if the regulation is an undue burden irrespective of Bellotti.

13

III.

This Circuit reviews the grant or denial of a preliminary injunction under the abuse of discretion standard. <u>Direx Israel, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 814 (4th Cir. 1991).

"[A] preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." <u>Hughes Network Systems, Inc. v. Interdigital Communications Corp.</u>, 17 F.3d 691, 693 (4th Cir. 1994). It is now axiomatic which standards should be applied in this Circuit when determining whether a party's motion for preliminary injunctive relief should be granted. The proper analysis is based on this Circuit's opinion in <u>Blackwelder Furniture Co. v. Seilig Manufacturing Co.</u>, 550 F.2d 189 (4th Cir. 1977). In that case, this Circuit adopted a hardship balancing test to be applied by the district courts when making such a determination. <u>Rum Creek Coal Sales, Inc. v. Caperton</u> , 926 F.2d 353, 359 (4th Cir. 1991); <u>L.J. By and Through Darr v. Massinga</u>, 838 F.2d 118 (4th Cir. 1988), <u>cert. denied</u>, 488 U.S. 1018 (1989). A district court deciding whether to grant a preliminary injunction must consider the following four factors:

> "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
>
> (2) the likelihood of harm to the defendant if the requested relief is granted,
>
> (3) the likelihood that the plaintiff will succeed on the merits, and
>
> (4) the public interest."

<u>Direx Israel</u>, 952 F.2d at 812 (quoting <u>Rum Creek Coal Sales</u>, 926 F.2d at 359). The plaintiff bears the burden of establishing that these factors favor granting the injunction. <u>Id.</u>

Under this hardship balancing test, the first two factors regarding the likelihood of irreparable harm to the plaintiff if denied and of

14

harm to the defendant if granted are the most important. Id. (quoting Rum Creek Coal Sales, 926 F.2d at 359). Thus, the first task of the district court is to determine the harm that will be suffered by the plaintiff if no preliminary injunction is entered. The harm demonstrated by the plaintiff must be "`neither remote nor speculative, but actual and imminent.'" Id. (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)). The district court must then balance this harm against the harm which would be suffered by the defendant if the preliminary injunction is granted. Id.

Once this balancing is completed, the district court can then determine the degree to which the plaintiff must demonstrate a likelihood of success on the merits. In this regard, we have stated:

> "If, after balancing those two factors [i.e. irreparable harm to plaintiff against harm to the defendant], the balance `tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if `the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.' As the balance tips away from the plaintiff, a stronger showing on the merits is required."

Id. (quoting Rum Creek Coal Sales, 926 F.2d at 359). Thus, the balancing of hardships must be made before reaching the question of likelihood of success on the merits, because "[u]ntil that balance of harm has been made, the district judge cannot know how strong and substantial must be the plaintiff's showing of `likelihood of success.'" Id. After the district court has balanced the hardships, determined the required showing of likelihood of success on the merits and analyzed that likelihood, the district court also analyzes the final factor, the public interest. Once this analysis is completed, the district court is in the proper position to make a final determination of whether a preliminary injunction should be entered.

IV.

The Court now determines whether the District Court below abused its discretion in finding that the Appellants had failed to demonstrate any likelihood of irreparable harm if an injunction were

15

denied and that the balance of hardships was therefore not in Appellants' favor. The Court turns first to the issue of irreparable harm to the Appellants.

A.

Appellants submitted numerous affidavits in support of their motion for a preliminary injunction. Appellants argue that minors seeking abortions suffer from trauma caused by worry over a possible delay as the minor seeks a hearing date on which she can get to court or as the superior court holds a second hearing de novo to review a denial of a petition by the state district court, and by worry that these delays may prevent her from obtaining the abortion. A minor may also experience trauma, Appellants argue, because they fear that they will not be able to slip away to court without their parents or others finding out, because a note from a court for a school absence may look suspicious, or because they risk being seen at the courthouse. Appellants also argue that victims of rape or incest will be traumatized over the possibility of having to reveal the details of the assault in court. The delay itself is alleged to be an irreparable injury because the medical risks of an abortion increase with each week of pregnancy. Many minors do not menstruate regularly and may not discover they are pregnant until later in the pregnancy. Waiting for consent or a judicial order may cause an additional delay which increases the medical risks even further. Appellants argue that a delay will increase the cost of the abortion, and that the need to raise the necessary funds to pay for the abortion may also lengthen the delay. Appellants also argue that some minors may become so desperate that they try to self-induce an abortion or commit suicide. Some minors may wait until they are 18 years of age and no longer need consent, thereby increasing the delay and the medical risks. Minors may also choose to travel to another state where they can obtain an abortion without consent or a judicial order.

The District Court correctly emphasized that its decision regarding irreparable injury to the plaintiff must not be based on the ultimate issue of the constitutionality of the statute in question and recognized that the showing necessary to demonstrate irreparable harm is less strict in cases involving the constitutional challenge to a statute than in cases in which there is the possibility of future monetary damages.

16

Manning, No. 1:95cv229, slip. op. at 10 (quoting Rum Creek Coal Sales, 926 F.2d at 362). The District Court then proceeded to determine if the alleged harms put forth by the Appellants were tied to an alleged undue burden on the right of unemancipated minors to an abortion. Id. at 13-25. The District Court concluded that "[t]he affidavits in support of a preliminary injunction do not make a `clear showing' of irreparable injury which is `neither remote nor speculative, but actual and imminent.'" Id. at 25 (quoting Direx Israel, 952 F.2d at 812). Appellants challenge this finding by arguing that the District Court misunderstood the relationship between irreparable harm and a constitutional violation. Appellants argue that a finding of irreparable harm does not depend on a statute's constitutionality and that an abortion regulation can cause irreparable harm without regard to whether the regulation is legally sound on the merits.

Appellants point to the opinions of several courts which find a likelihood of irreparable harm from abortion regulations without a determination on the merits. See, e.g., Williams v. Zbaraz, 442 U.S. 1309, 1315 (Stevens, Circuit Justice) ("Whether or not these findings provide support for the District Court's judgment on the merits, a distinct question which I do not consider here, it is clear that they do provide support for plaintiffs' claims of irreparable injury if a stay is granted."). This Court does not find, however, that the District Court discounted this possibility or relied on a determination that the statute was unconstitutional in its holding that there was no likelihood of irreparable harm to the plaintiffs. The District Court merely required that the plaintiffs demonstrate some link between their constitutional challenge and the irreparable injuries they claimed. This is not an improper application of Blackwelder, but is instead required by this Circuit's finding in Direx Israel that the injury alleged not be remote or speculative. See 952 F.2d at 812.

The District Court made specific factual findings with regard to the causal link between the alleged injuries and the Act. The District Court found that for the most part, delays in obtaining an abortion would be caused not by the Act, but by the actions of the minor or by the time it takes for the minor to discover that she is pregnant. Manning, No. 1:95cv229, slip op. at 18. Thus, the medical risks associated with later-term abortions and any required two-day medical procedures would be caused by circumstances not linked to the Act's

17

judicial bypass. Id. Minors in such a situation would need these procedures and be subject to these risks whether the Act was enforced or not. In the case of a medical crisis in which a doctor determines that an immediate abortion is necessary because of a medical emergency, the Act specifically states that no consent or judicial order is necessary. Id. at 18-19 (citing N.C. Gen. Stat. § 90-21.9). No affidavits were submitted which would justify a contrary conclusion. Id. The affidavits also did not demonstrate that suicide attempts or attempts to self-abort are linked to the Act and not a minor's stress about the pregnancy in general. Id. at 18. Nor was there any showing of an increased frequency in suicide attempts by pregnant minors which is caused by the Act. Id. In addition, the Court points out that none of the affidavits submitted by the plaintiffs are from pregnant minors recounting first-hand their personal experiences with the judicial bypass or which make any showing that the reporting requirement has breached the confidence of a minor. Further, although minors may have difficulty getting to court without their parents or school finding out, the same difficulty will be had when the minor leaves home or school to go to her doctor for consultation or for the abortion.

Teen pregnancy is a traumatic experience which carries with it medical risks. With this the Court does not disagree. Merely recounting the trauma and risks involved in teen pregnancy, however, is not sufficient to preliminarily enjoin enforcement of a parental consent statute. Especially in a facial challenge in which a court is asked to enjoin a statute with little insight into how the statute is actually being implemented and its actual effect on unemancipated minors, plaintiffs must draw a correlation between the alleged injuries -- which must be more than generalized problems associated with teen pregnancy -- and the challenged provisions within the statutory scheme. The Court agrees that young pregnant minors have a need for emotional support as well as a confidential and expeditious bypass. But in no case have the Appellants tied these needs to a harm directly caused by the Act. This fact was the basis of the District Court's opinion, which made specific factual findings and found that no such correlation was made. Because the burden is on the plaintiff to demonstrate that all the requirements of Blackwelder favor granting the preliminary injunction and because there is no requirement that the District Court have found differently as a matter of law, this Court finds that the District

18

Court did not abuse its discretion by determining that the plaintiffs failed to demonstrate a likelihood of irreparable injury.**3**

B.

Because the burden of proving that each of the Blackwelder prongs favors the granting of a preliminary injunction is on the plaintiff, a finding that the plaintiff has failed to demonstrate any likelihood of irreparable injury would be sufficient to deny injunctive relief. See Direx Israel, 952 F.2d at 812. Because the District Court addressed the issue, the Court finds it necessary also to discuss the likelihood of harm to the defendants. The District Court determined that the interests of North Carolina would be undermined by a preliminary injunction. Manning, No. 1:95cv229, slip op. at 27. The District Court relied on the "overall responsibility of the state to be concerned with the health, safety, and welfare of its citizens" and the recognition that "this responsibility is particularly acute as to its minor citizens." Id. Appellants argue that there is no basis in the record to support a finding of harm to North Carolina and that a finding of harm based on the state's assertion of public policy in furtherance of these interests would improperly rely on a "states' rights" argument. The Court finds no abuse of discretion in the District Court's finding of harm to North Carolina.

In the case of abortion statutes, the Supreme Court has made it quite clear that the state also has important interests at stake. As has already been stated, Roe itself recognized the state interests in preserving and protecting the life of the mother and in protecting potential human life. 410 U.S. at 162-63; see supra part II.A. This Court takes care to recognize these interests given the Supreme Court's statement that this portion of Roe "has been given too little acknowledgment and implementation by the Court in its subsequent cases."

_____

**3** Certainly, there are statements within the District Court's opinion which could be read as an analysis on the merits, not on the likelihood of irreparable injury. It may be that the District Court overanalyzed the alleged injury's relationship to the alleged constitutional infirmities. The essence of the District Court's analysis, however, relied on the factual findings that no correlation between the alleged injuries and the Act was made.

19

<u>Casey</u>, 505 U.S. at 871 (plurality opinion). In the case of abortions for minors, these interests take on added meaning when augmented by the state's interest in protecting children from their own lack of maturity and in ensuring that a minor without the maturity to choose to have an abortion does not do so when it is not in her best interests. <u>Bellotti</u>, 443 U.S. at 634; <u>see supra</u> part II.B. North Carolina has also sought to protect minors by requiring that judges who become aware of minors who are the victim of rape or incest report such abuse to the Department of Social Services.

This Court must also recognize North Carolina's interest in the family. The states have a high stake in protecting family relationships and responsibilities. The laws of this nation make parents responsible for the rearing of their children and seeing that the children are not just fed and clothed, but properly educated so that they may grow and mature into productive members of society. Common experience tells us that all of society relies on the family unit for the training of children through the family's participation on a meaningful basis in helping children deal with their problems.

North Carolina has enacted its parental consent statute with a judicial bypass to further these interests. If the preliminary injunction were granted, North Carolina would have no statutory scheme designed to further its interests with regard to minors who seek abortions. Further, it would have one less avenue to discover the sexual abuse of children and take action to protect these innocent victims. Preventing North Carolina from pursuing these interests by enjoining the Act would prevent it from protecting those minors who become pregnant. Enjoining the Act would also prevent North Carolina from keeping parents involved and submit this most important and potentially catastrophic problem of a child exclusively to a doctor who does not have as extensive a knowledge of the child's background, personality, and maturity. To the extent that the state has an interest in protecting the child from a difficult family situation, North Carolina has created a judicial bypass for children who cannot rely on the family the way most children in healthy family units can. The Supreme Court's repeated recognition of these state interests and the use of parental consent statutes with judicial bypasses to further those interests is sufficient for our purposes here; this Court need not have specific evidence beyond the statutory scheme and North Carolina's

20

reason for enacting it to recognize that an injunction would prevent North Carolina from pursuing these interests, causing harm to the state.

Nor is this finding of harm to the state a recognition of some general "states' rights" argument revolving around federal court interference in a state's administration of its programs. Appellants rely on Darr, supra, in this regard. In Darr, this Circuit upheld a preliminary injunction granted to enjoin Maryland's enforcement of its federally-funded foster care program which was alleged to be poorly administered. Maryland argued that the principles of federalism protected it from federal court interference in the administration of state programs. 838 F.2d at 121. Rejecting this argument, the Darr court stated that if the argument were "carried to [its] logical extreme, federal courts would be powerless to enforce federal rights in any case where enforcement would conflict with the rights of a state." Id. Appellants point to this language in arguing that North Carolina cannot assert its interest in advancing public policy. Appellants' position is an overstatement of Darr's holding. Darr did not hold that a state was barred from asserting its ability to further its interests during an analysis of harm to the parties. Darr held that the assertion of a state's interest in the administration of its programs does not bar federal court review of or preliminary relief from the program. Instead, such interests were to be considered in the framework of the Blackwelder analysis and to be "fully respected and overridden only in those instances in which the apparent denial of a federal right is so egregious that the individual right to interim relief outweighs the governmental interest to be free from federal judicial interference." Id. This holding contemplates that any harm to state interests will be recognized in the Blackwelder analysis, but subjected to the same balancing and analysis on the likelihood of success on the merits as would be done in any other case in which a preliminary injunction is sought. The injury relied upon by the District Court is not to a general ability to enact public policy, but to further state interests repeatedly recognized to be constitutional by the Supreme Court. The District Court's opinion does nothing more than recognize a likelihood of harm to the defendants which must be balanced against the likelihood of irreparable injuries to the plaintiff.

Because the District Court found that the Appellants had not demonstrated the likelihood of irreparable injury to them or that the bal-

21

ance of hardships is obviously in their favor, this Court finds no error in the District Court's holding.

V.

The Court now addresses the likelihood of success on the merits of Appellants' facial challenge to the Act. The District Court found that the Appellants had failed to show a likelihood of success on the merits in this litigation. Manning, No. 1:95cv229, slip op. at 28. The strength of the showing required of a plaintiff on the likelihood of success on the merits depends on the result of the balance of hardships, discussed supra part IV. Even if Appellants had shown that the balance of hardships favored them so that we were required to apply the least strict standard in our analysis on the likelihood of success on the merits, this Court finds that Appellants have failed to raise "`questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.'" Direx Israel, 952 F.2d at 812 (quoting Rum Creek Coal Sales, 926 F.2d at 359). The Court therefore finds no abuse of discretion in the District Court's decision.

With regard to parental consent statutes, the Supreme Court has "been over most of this ground before," Casey, 505 U.S. at 899 (plurality opinion), and has repeatedly found that states can enact parental consent statutes provided they also enact a proper judicial bypass procedure. See supra part II.B. On appeal, Appellants challenge the adequacy of the judicial bypass, arguing that its provisions, on its face, do not comply with the standards set forth by the Supreme Court or are an undue burden on the minor's right to an abortion. Appellants specifically argue that the Act contains no guaranty of expedition or confidentiality during any appeals to the North Carolina Court of Appeals or Supreme Court; that the Act's reporting requirement of evidence of rape or incest to The Department of Social Services further breaches the minor's guaranty of confidentiality in bypass proceedings; and that the de novo appeal to the superior court and the Act's requirement that an appeal to the superior court be filed within 24 hours are an undue burden on the minor's right to obtain an abortion.

22

Because this is a facial challenge, Appellants carry a heavy burden. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the . . . Act might operate unconstitutionally is insufficient to render it wholly invalid, since we have not recognized an `overbreadth' doctrine outside the limited context of the First Amendment." United States v. Salerno, 481 U.S. 739, 745 (1987). The District Court applied this standard citing similar language in Akron II, in which the Supreme Court found that an abortion regulation should not be invalidated on a facial challenge "based on a worst-case analysis that may never occur." 497 U.S. at 514. Appellants do not challenge this standard.**4** Thus, in order to succeed, Appellants are

_____

**4** The circuits are divided as to whether to apply the Salerno standard to facial challenges of abortion regulations in light of language in the Casey plurality opinion. In Casey, the plurality stated that an abortion regulation is facially invalid if "in a large fraction of cases in which [it] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." Casey, 505 U.S. at 895; see also id. at 942 (Blackmun, J., concurring and dissenting). The Third, Eighth, and Ninth Circuits have held that this language in Casey effectively displaced the Salerno standard as applied to abortion regulations. Compassion in Dying v. Washington, 79 F.3d 790, 798 n.9 (9th Cir.) (en banc), cert. granted sub. non., Washington v. Glucksberg, ___ U.S. ___, 117 S.Ct. 37 (1996); Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452, 1456-58 (8th Cir. 1995), cert. denied sub nom., Janklow v. Planned Parenthood, Sioux Falls Clinic, #6D6D 6D# U.S. ___, 116 S.Ct. 1582 (1996); Casey v. Planned Parenthood of Southeastern Pa., 14 F.3d 848, 863 n.21 (3d Cir. 1994).

The Fifth Circuit has refused to recognize that Casey overruled the standard applied in Salerno. In Causeway Medical Suite v. Ieyoub, 109 F.3d 1096 (5th Cir. 1997), the Fifth Circuit noted that three Justices -- Justices O'Connor, Souter, and Stevens -- have expressed the view that the Casey standard applies in opinions accompanying the denial of certiorari or a denial of a stay pending appeal. Id. at 1102-03 (citing Janklow, ___ U.S. at ___, 116 S.Ct. at 1583 (Stevens, J., mem. respecting denial of certiorari); Fargo Women's Health Organization v. Schafer, 507 U.S. 1013, 1014 (1993) (O'Connor, joined by Souter, J., concurring in denial of stay pending appeal)). Three other Justices -- Justices Rehnquist, Scalia, and Thomas -- have expressed their opinion that Salerno

23

required to show that under no set of circumstances can the Act be applied in a manner which is not an undue burden on an unemancipated pregnant minor's right to obtain an abortion.

As already discussed, when reviewing the Act's judicial bypass, a court's primary focus is on the standards set forth by the Supreme Court in Bellotti. If the specific provision at issue is addressed by Bellotti and satisfies its standards, then the provision cannot be said to be an undue burden on the minor's right to an abortion. If the Bellotti standards do not address the specific provision, the court then turns to whether the provision is an undue burden on the minor's right to an abortion irrespective of Bellotti. See supra part II.B.

---

applies. Id. at 1103 (citing Janklow, ___ U.S. at ___, 116 S.Ct. at 1584-87 (Scalia, J., joined by Rehnquist, C.J., and Thomas, J., dissenting from denial of certiorari)). Because opinions respecting the denial of certiorari or regarding stays pending appeal are considered dicta, the Fifth Circuit found that the Court appeared to be evenly split in non-binding opinions and that "it would be ill-advised for us to assume that the Court will abandon Salerno because three members of the Court now desire that result." Id. at 1103-04.

The parties have not asked this Court to decide that the District Court improperly applied the Salerno standard for review of facial challenges, and this issue is not now properly before the Court. The Court notes in passing, however, that the reasoning of the Fifth Circuit appears to be most persuasive. It is not the province of the court of appeals to predict how the Supreme Court will ultimately rule on an issue. Casey does not specifically overrule Salerno. At the moment, the most that can be said is that three Justices have indicated a desire to do so. Until the Supreme Court specifically does so, though, this Court is bound to apply the Salerno standard as it has been repeatedly applied in the context of other abortion regulations reviewed by the Supreme Court, see, e.g., Rust v. Sullivan, 500 U.S. 173, 183 (1991); Akron II , 487 U.S. at 514; Webster v. Reproductive Health Servs., 492 U.S. 490, 524 (1989) (O'Connor, J., concurring), and in the context of challenges to legislative acts based on other constitutional grounds, see, e.g., Reno v. Flores, 507 U.S. 292, 300-01 (1993) (stating in context of constitutional and statutory challenge to deportation regulations of the Immigration and Naturalization Service that Salerno standard applies to constitution-based challenges as well as statute-based challenges).

24

A.

Appellants argue that, although it purports to do so, the Act does not satisfy <u>Bellotti</u>'s requirements that the judicial bypass procedures maintain the confidentiality of the minor[5] or provide her with an expeditious decision on her petition. It is clear that the statute provides for expedition and confidentiality in the provisions which obviously apply to hearings before the state district courts and superior courts. Appellants' challenge is based on the argument that these provisions do not apply to the North Carolina Court of Appeals and Supreme Court. Appellants argue that the Act contains no guaranty of confidentiality or expedition, as required by <u>Bellotti</u>, 443 U.S. at 643-44; see <u>supra</u> part II.B, at the appellate level beyond the superior court. The North Carolina Court of Appeals has ruled that minors have no right to appeal past the superior court, but may seek a writ of certiorari. <u>In re Doe</u>, <u>supra</u>. Because there is nothing on the face of the Act to indicate that it does not comply with <u>Bellotti</u> and because the North Carolina Court of Appeals has demonstrated that it is well aware of the need for expedition and confidentiality at all levels of the bypass, the Court finds these provisions of the Act to be constitutional.[6]

State legislatures need only provide the framework for a proper judicial bypass which complies with <u>Bellotti</u>. <u>See Ashcroft</u>, 462 U.S. at 491 n.16. North Carolina contends that the Act specifically provides for a confidential judicial bypass. <u>See</u> N.C. Gen. Stat. § 90-21.8 ("Court proceedings under this section shall be confidential . . . ."); <u>id.</u> § 7A-675 ("The court's entire record of a proceeding involving consent for an abortion on an unemancipated minor . . . is not a matter

_____

[5] Appellants also challenge the reporting requirement as violating <u>Bellotti</u>'s mandate of confidentiality. The Court discusses this argument at <u>infra</u> part V.B.

[6] While the Court concludes that expeditious determinations on appeal to the North Carolina Court of Appeals and Supreme Court can be expected in all judicial bypass cases, it would have simplified the problems with which this Court has had to contend if the Act provided a level of specificity for expedition in the state appellate courts which mirrored the expedition contained in the statute with respect to the state district court and superior court hearings.

25

of public record, shall be maintained separately from any juvenile record, shall be withheld from public inspection, and may be examined only by order of the court, by the unemancipated minor, or by the unemancipated minor's attorney or guardian ad litem."). With regard to expedition at the appellate level, North Carolina relies on already existing procedures. North Carolina has provided statutory authority for discretionary review by the North Carolina Supreme Court of any adverse decision by the superior court. N.C. Gen. Stat. § 7A-31. Further, the North Carolina Rules of Appellate Procedure state:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division [Court of Appeals or Supreme Court] may . . . suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

N.C.R. App. P. 2. After argument was heard in this case, the North Carolina Court of Appeals found that the Act's judicial bypass "provide[s] expeditious appellate review without unduly burdening the constitutional rights of the minor" while continuing "to insure the statutorily required confidentiality." In re Doe, ___ S.E.2d at ___, slip op. at 6 & 7.

The District Court below agreed with North Carolina. Manning, 1:95cv229, slip op. at 16-19. The District Court found that Bellotti's expedition requirements were met by the ability of the minor to seek an appeal directly to the state Supreme Court, obviating the time needed to seek a hearing at the Court of Appeals, and the ability of the minor to move for and the appellate courts to grant an expedited hearing and decision pursuant to the Rules of Appellate Procedure. The District Court also found that the provisions of the Act with regard to confidentiality apply generally to all "[c]ourt proceedings under this section," N.C. Gen. Stat. § 90-21.8(d), and are not limited on the face of the Act to the state district and superior court levels.

Appellants cite several cases from other circuits which deal with similar issues. Appellants argue these cases require this Court to find

26

that, because the Act does not state with specificity the time lines which appellate courts above the superior court level must follow in order to provide an expeditious hearing and can be read such that its requirement of confidentiality does not apply to the appellate courts, the Act is unconstitutional on its face. For example, in Causeway Medical Suite v. Ieyoub, 109 F.3d 1096 (5th Cir. 1997), the Fifth Circuit held that a statute which contained no specific time lines at any level but instead only provided that the hearing proceed in a summary manner did not comply with Bellotti. Id. at 1110-11. The Fifth Circuit relied on the Ninth Circuit's opinion in Glick v. McKay, 937 F.2d 434 (9th Cir. 1991), overruled in part, Lambert, supra. In Glick, the Ninth Circuit dealt with a statute which provided specific time periods for almost every level, but did not contain any time limitation within which the state district court was required to rule upon the decision. The Ninth Circuit found that this lack of specificity at the state district court level violated the requirements of Bellotti. Id. at 441. In Zbaraz v. Hartigan, 763 F.2d 1532 (7th Cir. 1985), aff'd by equally divided court, 484 U.S. 171 (1987) (per curiam), the Seventh Circuit found that a judicial bypass which required the state Supreme Court to provide by rule for an expedited and confidential appeal was constitutionally flawed because the state Supreme Court relied on a general rule which provided it with the general discretion to expedite an appeal in any case instead of relying on a specific rule tailored solely to the judicial bypass of the parental notice statute. Id. at 1539-42. The Seventh Circuit also applied this reasoning to Bellotti's confidentiality requirement, finding the bypass unconstitutional on its face because it lacked specific rules beyond the requirement that the bypass be confidential and ensure the minor's anonymity. Id. at 1543-44.

With respect, the Court finds this reasoning unpersuasive. Because this Court departs from the reasoning used by these other circuits, the Court finds it necessary to discuss its reasoning for departure at some length. These opinions rely upon an assumption that state courts will ignore the mandates of Bellotti if given the chance. Such an assumption is improper. State judges are bound, just as federal judges are, to uphold the Constitution of the United States and to follow the opinions of the United States Supreme Court. See U.S. Const. art. VI ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be

27

bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 315 (1816) ("The state courts are to adjudicate under the supreme law of the land, as a rule binding upon them. They . . . act upon it as a municipal law of the state where they sit, but derived from the government of the United States."). The Supreme Court has ruled, in the context of challenges to abortion regulations, that federal courts should not assume lightly that a state will not comply with Supreme Court mandates. While discussing Glick in its opinion in Lambert, the Supreme Court specifically admonished the Ninth Circuit, finding, in a facial challenge, it "was incorrect [for the Ninth Circuit] to assume that Montana's statute `narrow[ed]' the Bellotti test . . . ." Lambert, ___ U.S. at ___, 117 S.Ct. at 1172. In Akron v. Akron Center for Reproductive Health, 462 U.S. 416 (1983), partially overruled on other grounds, Casey, supra ("Akron I"),**7** the Supreme Court held that "[i]t is reasonable to assume . . . that a state court presented with a state statute specifically governing abortion consent procedures for pregnant minors will attempt to construe the statute consistently with constitutional requirements." Id. at 441; see also Akron II, 497 U.S. at 515 ("Absent a demonstrated pattern of abuse or defiance, a State may expect that its judges will follow mandated procedural requirements. There is no showing that the time limitations imposed by [the statute] will be ignored."); Ashcroft, 462 U.S. at 491 n.16 ("There is no reason to believe that Missouri will not expedite any appeal consistent with the mandate in our prior opinions.").

The fault the Supreme Court found with the judicial bypass at issue in Akron I was not in the generality of the statute, but the lack of procedures for making the necessary determinations called for in a judicial bypass by Bellotti. Akron I, 462 U.S. at 416 & n.31. Under those circumstances, the Court could not find the statute to be "reasonably susceptible of being construed to create an `opportunity for case-by-case evaluations of the maturity of pregnant minors.'" Id. at 441-42

_____

**7** In Casey, the Supreme Court overruled its holding in Akron I finding unconstitutional a statute which required informed consent; that a physician, not a qualified assistant, give such information; and that the mother wait twenty-four hours before obtaining an abortion. Casey's holding in these regards is irrelevant to this decision today, and this Court finds that the relevant portion of Akron I is still persuasive.

28

(quoting Bellotti, 443 U.S. at 643 n.23 (plurality opinion)). The Court in Akron I relied upon the total lack of tools which would allow the state courts to carry out a judicial bypass. This demonstrated a clear deficiency on the face of the statute which would prevent compliance with Bellotti. In Causeway, the Fifth Circuit found an intent on the part of the state legislature not to comply with Bellotti through language in amendments to the Louisiana parental consent statute. These amendments changed the provision, which required a court to certify an abortion when a minor shows that she is mature or that an abortion would be in her best interests, by changing the mandatory word "shall" to "may." Louisiana argued that the change did not alter the meaning of the statute to make the decision to certify the abortion discretionary instead of mandatory. The Fifth Circuit found that because the legislature had specifically altered the language of the statute, under Louisiana law, the legislature is presumed to have intended a change in the law. Id. at 1109. Thus, the Fifth Circuit had found an intent on the part of the state legislature, evidenced by the amendment, not to comply with Bellotti's requirement that the state judge must, not may, certify the abortion after the minor makes the required showings.

Returning to the case at hand, this Court cannot assume that the state appellate courts will find the confidentiality requirements contained within the Act do not apply to them or that the appellate courts will not provide for an expedited appeal and decision. It is improper for a federal court to assume easily, without factual support of such findings, that state courts will not comply with the confidentiality and expedition mandates of the Supreme Court. This Court must, and the Court emphasizes that it does, expect state judges to comply with the mandates of the Supreme Court and ensure expedition and confidentiality at every level of the judicial bypass which hears the petition and for every minor utilizing it. This Court finds that a plaintiff challenging state statutes which require parental or judicial consent before a minor can obtain an abortion must show that the statutory program on its face exhibits some clear intent of the state to circumvent Bellotti's requirements or some clear deficiency making compliance impossible, or introduce evidence showing that the statutory program is actually applied in a manner which does not comply with Bellotti.

29

Applying this standard to the North Carolina Act, the Court finds that the Appellants have failed to make the required showing. The North Carolina Act provides the state courts with full jurisdiction and statutory authority to fulfill their duties under the judicial bypass. The Act specifically provides unemancipated pregnant minors an absolute right to an expeditious and confidential hearing initially at the state district court and an appeal as of right to the superior court. Hearings and decisions at these two levels must conclude within, at most, 17 days.**8** By judicial interpretation, minors have access to review of erroneous lower court decisions by applying for a writ of certiorari to the North Carolina Court of Appeals and Supreme Court. In re Doe, supra. The North Carolina Court of Appeals has already demonstrated that this structure is sufficient to correct a misapplication of the Act by the lower courts. See id. (reversing superior court's denial of petition because superior court failed to apply all provisions of Act and ordering waiver of parental consent). When appeals above the superior court are heard, procedural rules -- such as those giving the minor the opportunity to bypass the North Carolina Court of Appeals or which allow the appellate courts to expedite the minor's appeal -- are in place which will enable the appellate courts to comply with Supreme Court mandates to provide an expeditious hearing. When hearing the appeal in In re Doe, the North Carolina Court of Appeals demonstrated its understanding of the expedition requirements by hearing and deciding an appeal in a minor's petition only four days after the appeal was filed. See In re Doe, ___ S.E.2d at ___, slip op. at 1. Further, nothing on the face of the Act exempts the appellate courts from the Act's confidentiality requirements, and there is no reason to assume that the North Carolina courts will not interpret the Act to require confidentiality at the appellate court level. Again, in the only state opinion on which this Court can rely, the North Carolina Court of Appeals referred to continuing confidentiality during any appeals above the superior court level. Id. at ___, slip op. at 6-7. On their face, then, these provisions of the Act comply with Bellotti and

_____

**8** This time period is calculated based on circumstances in which the petition is denied at the first court level and each actor within the bypass takes the maximum amount of time allowed to act: the state district court seven days to hear the petition and deny it, the minor 24 hours to appeal, the superior court seven days to hear the appeal and 48 hours to issue its decision.

30

are not an undue burden on a minor's right to an abortion. The District Court therefore did not err in finding that the Appellants were not likely to succeed on the merits with these claims.

B.

Appellants also bring one other challenge under the confidentiality prong of Bellotti. Appellants claim that the reporting requirement is also a breach of the minor's confidence. The Act requires the state judge to report any evidence that the minor was raped or is the victim of incest discovered during the bypass procedure. N.C. Gen. Stat. § 90-21.8(f). This duty is the same as that imposed on anyone else who might come upon such evidence through other circumstances. Id. § 7A-543. Once reported, the Department of Social Services is required to make "a prompt and thorough investigation of the abuse or neglect, and the risk of harm to the juvenile, in order to determine whether protective services should be provided or the complaint filed as a petition." Id. § 7A-544. The Department of Social Services is also required to determine if other juveniles in the home are threatened and in need of protective services. Id. Appellants argue that if a pregnant minor who is the victim of rape or incest knows that this information will be reported, she may be deterred from utilizing the judicial bypass. The District Court did not agree and found that the reporting requirement was designed to protect the minor and, in any case, the minor could obtain certification for the abortion without disclosing the rape or incest by proving that she is mature or that the abortion is in her best interests. Manning, 1:95cv229, slip. at 22-23. This Court finds no abuse of discretion in the District Court's holding.

At no time has a majority of the Supreme Court held that a reporting requirement is unconstitutional. Appellants rely primarily on Justice O'Connor's concurrence in Hodgson, supra, and the Eighth Circuit's opinion in Miller, supra, to support their position. In Hodgson, the Court upheld a statute which required notification to both parents of the minor's intention to have an abortion unless the minor's doctor reported that she was the victim of abuse or neglect or obtained certification through a judicial bypass, Justice O'Connor, discussing the reporting provision, stated that the provision was "in reality, a means of notifying the parents." Hodgson, 497 U.S. at 460 (O'Connor, J., concurring). Regardless of this statement, however,

31

Justice O'Connor voted, along with four other justices, to uphold the statute because it contained a judicial bypass through which the minor could avoid reporting the abuse and still obtain a court order authorizing the abortion. In Miller, the statute's only exception from the parental notice was for cases in which the doctor reported abuse of the minor. No judicial bypass was provided. The Eighth Circuit found that "[i]n practice, it seems, South Dakota's abuse exception will sometimes result in parental notification, even if after-the-fact." Miller, 63 F.3d at 1461.

As previously stated, this Court should not assume on a facial challenge that the Act's reporting requirement will in practice result in parental notification. See supra part V.A. The Act contains a specific statutory requirement that "[a]ll information received by the Department of Social Services, including the identity of the reporter, shall be held in strictest confidence by the Department." N.C. Gen. Stat. § 7A-544. Further, Bellotti requires that the fact of the abortion be kept confidential, but does not address the fact that the child has been the victim of rape or incest. The state judge can report the abuse to the Department of Social Services without revealing the fact that the child has sought or obtained an abortion. This Court does not believe that Bellotti should be construed more broadly than its holding to cover evidence of rape or incest. Most important, as was the case in Hodgson, a minor who does not disclose the abuse can still receive judicial consent if she can prove that she is mature or that the abortion is in her best interests. Thus, the Act does not require the minor to choose between obtaining the consent of a parental abuser for the abortion or reporting the parental abuser to authorities.

Lastly, this Court believes that the Appellants are advocating an unconscionable position. Appellants would have a judge, who is sworn to uphold the law, withhold vital information regarding rape or incest which would allow state authorities to end the abuse, protect the victim, and punish the abuser. Not only would Appellants' position prevent the judge from helping the victim seeking the abortion, but it would prevent the judge from helping other juveniles in the same household under the same threat of incest. This Court does not believe that the Constitution requires judges to be placed in such an untenable position. Instead, like the District Court, we agree with Justice Kennedy's statement in Hodgson:

32

The Court challenges the efficacy of this last exception because it believes that the statutory requirement that a physician report a minor's declaration of abuse to appropriate authorities . . . will deter minors from using the exception. This is not a proper basis for declaring the law invalid. Laws are not declared unconstitutional because of some general reluctance to follow a statutory scheme the legislature finds necessary to accomplish a legitimate state objective. . . . No one can contend that a minor who is pregnant is somehow less deserving of the State's protection. It is reasonable to provide that any minor who contends that she cannot notify her parent or parents because she is the victim of neglect or abuse must allow the State to use its power to investigate her declaration and protect her from harm.

Hodgson, 497 U.S. at 493-94 (Kennedy, J., joined by Rehnquist, C.J., White J., and Scalia, J., concurring). As the brief of North Carolina Right to Life, appearing as amicus curiae, points out, Appellants' position would instead afford protection to rapists and perpetrators of incest. This can only serve the interests of the criminal, not the child. Because the reporting requirement should be beneficial to the minor, does not violate Bellotti, and is not an undue burden on the minor's right to an abortion, this Court finds no abuse of discretion in the District Court's holding that Appellants are not likely to succeed on the merits with this challenge.

C.

Appellants next claim that the de novo hearing at the superior court after a denial at the state district court is an undue burden on the minor's right to an abortion. The Bellotti standards do not address whether a minor can be required to undergo a second hearing in which she must personally recount her story to the superior court after she has already done so to the state district court and had her petition denied. This Court must therefore determine if the second de novo hearing is an undue burden irrespective of Bellotti. The District Court found that the de novo hearing before the superior court was not an undue burden, but was instead a "bonus, a second bite of the apple, so to speak." Manning, 1:95cv229, slip op. at 14.

33

Appellants argue that the District Court failed to recognize the fear and tension that a minor feels when undergoing a hearing in which she must recount intimate details about her personal life. Appellants argue that the Supreme Court recognized this fear and tension in Hodgson, 497 U.S. at 441-42 & n.29. Appellants correctly concede that the Supreme Court nonetheless approved parental consent statutes with a judicial bypass. The thrust of Appellants' argument is that although one hearing is constitutionally permissible, a second hearing in which the minor must again go to court and discuss her personal life rises to the level of an undue burden.

The Court finds no constitutional defect with the second de novo hearing. On the contrary, the Court finds that the second hearing can in fact operate to make it more likely that the minor will succeed on her petition. As the District Court recognized, a court reviewing a petition de novo hears the issues and makes its decisions as if the petition had been originally filed in that court, "as if no hearing had been held by the [lower court] and without any presumption in favor of the [lower court] decision." Caswell County v. Hanks, 462 S.E.2d 841, 843 (N.C. Ct. App. 1995). The influence of the lower court's record and opinion should not be underestimated. When a court must review an appeal under a standard of review which includes viewing the record and opinion of the court below, some deference, in some manner, is paid to the lower court's findings. In the case of an appeal regarding a minor's decision to have an abortion, the deference would be paid to a denial of that petition. However, because the Act provides for a de novo review and a new hearing in which a new record will be created, a minor appealing to the superior court is not prejudiced by the lower court's denial of her petition, either by the findings of the lower court or by the record compiled by the lower court. Under this interpretation, the District Court's opinion that this provision is a bonus, not a burden, is not contrary to law. This Court cannot say that a second de novo hearing is per se an undue burden on the minor's right to an abortion. Unlike the Supreme Court in Hodgson, this Court does not have the benefit of an extensive record which supports Appellants' arguments. Certainly, the expedition with which the superior court must act is the important consideration in the minor's appeal. There is no showing that requiring the petitioner to testify or explain her situation a second time will increase the time element. In fact, this procedure recognizes that time might well be lost in having

34

the record before the state district court transcribed and submitted to the superior court. This Court therefore finds no abuse of discretion in the District Court's holding that the de novo hearing is not an undue burden.

D.

The District Court also found that the Appellants were unlikely to succeed in their challenge of the Act's requirement that a minor appeal a denial of her petition by the state district court to the superior court within twenty-four hours of the state district court's decision. The District Court based its finding on language in Ashcroft, supra, which it interpreted as approving of a similar requirement in a Missouri parental consent statute. Appellants argue such a short time period is an undue burden because it truncates the ability of the minor to preserve her right to an abortion and because the requirement would be difficult for minors to meet. Appellants primarily rely on Planned Parenthood v. Neely, 804 F. Supp. 1210 (D. Ariz. 1992), in support of their position.

There are two distinguishing factors between North Carolina's Act and the statute at issue in Neely. In dicta to its opinion in Neely, the United States District Court for the District of Arizona was primarily concerned with the ability of an unrepresented minor to decipher the procedures for an appeal and to prepare and file a notice of appeal within twenty-four hours, as well as problems with the procedures in the Arizona statute regarding notification to the minor of the court's decision. Id. at 1217. Minors appealing an adverse decision under North Carolina's Act do not face these problems. North Carolina allows the minor to proceed through a guardian ad litem and requires appointment of counsel if so requested by the minor. N.C. Gen Stat. § 90-21.8(c). Further, there are no problems associated with notifying the minor of the court's decision or any need for the minor to return to the courthouse a second time to file her appeal. Under rules adopted by the North Carolina Supreme Court, the state district court must issue its decision and inform the minor at the conclusion of the hearing. In order to appeal, the minor need only sign and date a pre-printed notice of appeal on the back of the order she receives from the state district court judge at the conclusion of the hearing. Thus, the factors which led the district court in Neely to find an undue burden

35

are not a burden on a minor pursuing a judicial bypass under the North Carolina Act.

Further, there is no error in the District Court's reliance on Ashcroft. The Missouri statute at issue in Ashcroft provided for the same time limit to file an appeal. Although this time limit was not specifically litigated, the Supreme Court did discuss the provision. The Court, after quoting the provision containing the twenty-four hour time limit to appeal, stated; "We believe this section provides the framework for a constitutionally sufficient means of expediting judicial proceedings." Ashcroft, 462 U.S. at 492 n.16. We cannot accept Appellants' argument that we should disregard the Supreme Court's statement. The Ashcroft opinion specifically quotes the twenty-four hour time limit provision and specifically approved of the section containing that provision. This is sufficient to support the District Court's finding. This Court therefore finds no abuse of discretion on the part of the District Court.

VI.

The last prong in the Blackwelder analysis is whether a preliminary injunction would be in the public interest. The Act has been on the books since 1995, and only the reporting requirement has been subject to an injunction by the District Court below in its first action on this case That injunction has not been in force since May 1996, when this Court set the injunction aside. The Act has therefore been operative in its entirety for a year and in the most part for more than a year. Refusing to enjoin the Act at this point would further any interest in maintaining the status quo pending any further appeal in this case. Clearly, the Act is in the best interests of the public. The Act helps preserve the traditional line of responsibility between parent and child. The Act also helps protect the family unit as a viable and time-honored means of raising children, and yet, through its judicial bypass, takes into account exceptional cases in a confidential and expeditious manner. Given these facts, and the Court's foregoing analysis on the balance of hardships and likelihood of success on the merits, the Court finds no abuse of discretion in the District Court's determination that a preliminary injunction would not be in the public's interest.

36

VII.

Lastly, Appellants argue that the District Court erroneously inter-
preted the Act's medical emergency exception to require judicial
authorization of an abortion. In its discussion of whether the de novo
appeal to the superior court was likely to be found an undue burden,
the District Court stated: "If there is an emergency need for the abor-
tion, and the attending physician so determines, immediate access to
judicial authorization is provided." Manning, 1:95cv229, slip op. at
14. Interpretation of this provision was not litigated by the parties and
was not properly before the District Court. Further, such an interpreta-
tion would be inconsistent with the plain language of the Act, which
states that in the case of a medical emergency, parental consent is not
necessary, which we interpret as meaning a judicial bypass of that
consent is not necessary. N.C. Gen. Stat. § 90-21.9 ("The require-
ments of parental consent prescribed by G.S. 90-21.7(a) shall not
apply when, in the best medical judgment of the physician based on
the facts of the case before the physician, a medical emergency exists
that so complicates the pregnancy as to require an immediate abor-
tion, or when the conditions prescribed by G.S. 90-21.1(4) are met.").
Given the context of the District Court's statement, this Court finds
that the statement was not meant to be an interpretation of the provi-
sion, and to the extent that it might have been, any interpretation of
the Act to require judicial authorization before an abortion obtained
for a medical emergency would be in error.

VIII.

For the reasons discussed, the Court finds that the District Court
did not abuse its discretion in denying Appellants' motion for a pre-
liminary injunction and failing to enjoin enforcement of the Act. The
judgment of the District Court is therefore

AFFIRMED.

37