Sonja M. HOLE, Plaintiff,

v.

NORTH CAROLINA BOARD OF ELECTIONS and Guilford County Board of Elections, Defendants.

No. 1:00CV00477.

United States District Court, M.D. North Carolina.

Aug. 17, 2000.

Jonathan Mark Brooks, law Offices of J. Mark Brooks, Randleman, NC, for Sonja M. Hole.

Susan Kelly Nichols, Alexander McClure Peters, N.C. Dept. of Justice, Raleigh, NC, for North Carolina Board of Elections.

Jonathan V. Maxwell, Office of Guilford County Attorney, Greensboro, NC, Angela Felicia Liverman, Deputy Co. Atty., Greensboro, NC, for Guilford County Board of Elections.

*MEMORANDUM OPINION*

BEATY, District Judge.

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Sonja M. Hole's Motion for Pre-

liminary Injunction [Document # 3] to prevent Defendants North Carolina Board of Elections and Guilford County Board of Elections (collectively "Defendants") from using the votes of voters not affiliated with the North Carolina Republican Party to determine the winner of the Guilford County District Court Judge Republican Primary of May 2, 2000. For the reasons that follow, Plaintiff's motion is DENIED.

## II. FACTUAL BACKGROUND

In 1987, the North Carolina General Assembly amended the State's election laws to allow unaffiliated voters to vote in the primary elections of political parties that adopt resolutions requesting that such participation be permitted. *See* Susan Yarborough Noe, Note, *North Carolina General Assembly Amends Election Laws to Allow Unaffiliated Voters to Vote in Party Primaries*, 66 N.C.L.Rev. 1208 (1988). On November 16, 1987, R. Jack Hawke, then the Chairman of the Republican Party of North Carolina, notified the Executive Secretary–Director of the State Board of Elections that the Executive Committee of the North Carolina Republican Party intended to allow unaffiliated voters to participate in its primary elections. (Bartlett Aff., Ex. 2). Absent any evidence of withdrawal of the 1987 notice by the Republican Party to allow unaffiliated voters to vote in Republican primaries for all elected offices, it appears that unaffiliated voters have voted in Republican primaries continuously since 1988.

The authorization for unaffiliated voters to vote in Republican primaries was in place at the time Plaintiff, Sonja M. Hole, a registered Republican, filed for the position of District Court Judge for Guilford County District Court. The same was true on the May 2, 2000 date of the state primary elections when Plaintiff was a candidate for the nomination of the Republican Party for the office of District Court Judge in Guilford County. Pursuant to N.C. Gen.Stat. § 163–22, Defendant North Carolina Board of Elections administers the laws of the State of North Carolina governing elections, including primary elections. Likewise, Defendant Guilford County Board of Elections, consistent with N.C. Gen.Stat. § 163–33, conducted the May 2, 2000 primary election pursuant to its statutory responsibilities. There was no difference between this Republican primary and others which had previously taken place except that Plaintiff did not prevail in her attempt to become the Republican nominee for District Court Judge in Guilford County. According to George Gilbert, the Director of the Guilford County Board of Elections, Plaintiff's competitor Nestor Capote received 8,130 votes, while Plaintiff received 8,061 votes, resulting in a margin of victory of 69 votes. (Gilbert Aff. ¶ 7.) Approximately 24,320 votes were cast in all of the elections for the entire Republican Party primary on May 2, 2000. (*Id.* ¶ 7.) It is known that at least 905 of these voters were unaffiliated with the Republican Party. (*Id.* ¶ 4.) However, because the ballots are not identifiable as to specific voters after they are cast, there is no method of determining how or how many unaffiliated voters, in particular, voted in the primary election to determine the Republican Party nominee for District Court Judge in the 18th Judicial District. (*Id.* ¶ 5–6.) It is known, however, that of the total 24,320 votes actually casts, only 16,191 of those voted in the election for the selection of a Republican nominee for District Court Judge in the 18th Judicial District.

Having lost the election, Plaintiff filed a Complaint [Document # 1] in this Court on May 11, 2000, based upon her contention that the inclusion of the ballots of unaffiliated voters in the primary election violated both her First Amendment right to freedom of association and the Fourteenth Amendment's Equal Protection Clause. In her Complaint, Plaintiff alleged that the numbers of unaffiliated voters could possibly have been the margin of difference in the election. Based upon this contention, Plaintiff moved for a temporary restrain-

ing order to prevent Defendants from using the votes of unaffiliated voters to certify the results of the election between Plaintiff and her opponent. In the alternative, Plaintiff requested that the Court grant an expedited preliminary injunction hearing. By Order dated May 17, 2000, this Court denied Plaintiff's motion for a temporary restraining order. In order for Plaintiff to more clearly discuss her claim, the Court granted Plaintiff's request for an expedited hearing. The Court notified the parties that a hearing on Plaintiff's request for a preliminary injunction was scheduled for May 25, 2000. Given that the Court had denied Plaintiff's motion for a temporary restraining order, on May 18, 2000, the State Board of Elections of North Carolina certified the election of Plaintiff's opponent as the Republican nominee for District Court Judge for the Eighteenth Judicial District. (Bartlett Aff., Ex. 1.) Upon Plaintiff's request for a continuance, the Court continued the hearing until June 23, 2000.

At the preliminary injunction hearing on June 23, 2000, Plaintiff again argued that N.C. Gen.Stat. § 163–119 violates the First Amendment of the Constitution of the United States by denying Plaintiff's individual freedom of political association.[1] This argument was grounded on Plaintiff's contention that N.C. Gen.Stat. § 163–119 improperly allows a political party to permit persons unaffiliated with that party to vote in the party's primary elections. Plaintiff further contended that the Court should take action to preserve the pre-election status quo by ordering Defendants to decertify the election of a nominee for the North Carolina Republican Party primary election for Guilford County District Court Judge.

In response, Defendants offered the case of *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986) in support of their argument that the inclusion of unaffiliated voters in the Republican Party primary election pursuant to N.C.G.S § 163–119 does not unconstitutionally abridge Plaintiff's First Amendment right to freedom of association nor deny her equal protection. In particular, Defendants contend that *Tashjian* specifically prohibits a state from making it mandatory that a political party conduct a closed primary. Prior to the passage of § 163–119, North Carolina required that each party conduct a closed primary. As previously stated, the North Carolina General Assembly, in response to the Supreme Court ruling in *Tashjian,* took it upon itself to make an open primary available to the political parties, which in effect brought North Carolina in compliance to *Tashjian.* Plaintiff, by this civil action, requests that the Court do just the opposite, that is, to order, on purported constitutional grounds, that any primary conducted by a political party be closed to voters unaffiliated with a particular party.

## III. DISCUSSION

### A. Preliminary Injunction Standards

■ Plaintiff now seeks a preliminary injunction to force Defendants to decertify the results of the May 2, 2000 Republican Party primary by not counting the votes of unaffiliated voters. This request is made despite the fact that the Republican Party has authorized the participation of unaffiliated voters in their party primaries without interruption since approximately No-

---

1. § 163–119 Voting by unaffiliated voter in party primary.

   If a political party has, by action of its State Executive Committee reported to the State Board of Elections by resolution delivered no later than the first day of December preceding a primary, provided that unaffiliated voters may vote in the primary of that party, an unaffiliated voter may vote in the

   primary of that party by announcing that intention under G.S. § 163–150(a). For a party to withdraw its permission, it must do so by action of its State Executive Committee, similarly reported to the State Board of Elections no later than the first day of December preceding the primary where the withdrawal is to become effective.

   N.C. Gen.Stat. § 163–119.

vember 1987. In determining whether a preliminary injunction should be granted, this Court must consider four factors: (1) the likelihood of irreparable harm to the plaintiff if the injunction is not entered; (2) the likelihood of harm to the defendant if the injunction is entered; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. *See Hughes Network Systems, Inc. v. InterDigital Comm. Corp.,* 17 F.3d 691, 693 (4th Cir. 1994) (citing *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 196 (4th Cir.1977)). A plaintiff has the burden of proving that these factors support a decision to issue a preliminary injunction against a defendant. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 812 (4th Cir.1991). The most important factors are the potential harm to the plaintiff and the potential harm to the defendant. *See Hughes,* 17 F.3d at 693. In undertaking this analysis, the Fourth Circuit has noted that:

> There is a correlation between the likelihood of plaintiff's success and the probability of irreparable injury to him. If the likelihood of success is great, the need for showing the probability of irreparable harm is less. Conversely, if the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify issuance of the injunction. Of all the factors, the two most important are those of probable irreparable injury to the plaintiff if the injunction is not issued and likely harm to the defendant if an injunction is issued. If upon weighing them the balance is struck in favor of the plaintiff, a preliminary injunction should issue if, at least, grave or serious questions are presented.

*North Carolina State Ports Authority v. Dart Containerline Co., Ltd.,* 592 F.2d 749, 750 (4th Cir.1979).

In more recent decisions, the Fourth Circuit has restated its position that the first two factors, which require a comparison of the hardships to be suffered by Plaintiff and the hardships to be suffered by Defendants, are given the heaviest weight. *See Manning v. Hunt,* 119 F.3d 254, 263–64 (4th Cir.1997); *see also Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.2d 353, 359 (4th Cir.1991). The Court will consider each of the factors stated above in turn.

## B. Balance of Hardships

■ Plaintiff argues that as a result of Defendants' certification of the May 2, 2000 primary election, she will suffer irreparable harm because her loss in the election may have been caused by the participation of unaffiliated voters. Given the fact that Plaintiff's competitor Nestor Capote received 8,130 votes, while Plaintiff received 8,061 votes, Mr. Capote would in fact become the Republican Party nominee for this position based upon a margin of victory of 69 votes. Plaintiff contends that her loss can be directly attributed to Defendants' mandate which provides the Republican Party with the opportunity to allow unaffiliated voters to participate in the Republican primaries. Even short of a complete legal analysis as to Plaintiff's constitutional claims, Plaintiff has not, and perhaps cannot, present any evidence to substantiate her position, but can only surmise that Capote's 69–vote margin of victory included the votes of unaffiliated voters in the Republican primary on May 2, 2000. It is entirely possible that a majority, if not all, of the unaffiliated voters who voted in the primary election for selection of a Republican nominee for Guilford County District Court Judge voted for Plaintiff. If this were the case, then it would not be argued by Plaintiff that she was harmed by the participation of unaffiliated voters in the primary election. Even if the unaffiliated voters were part of the winning numbers for Plaintiff's opponent, Plaintiff's loss in an open election does not constitute the type of irreparable harm envisioned by a consideration of a motion for preliminary injunction. While a loss in an election is always a disappointment to one who does

not emerge as the victor, without some recognizable legal harm, such an election loss for Plaintiff cannot be considered as irreparable harm for preliminary injunction analysis. Therefore, the Court finds that Plaintiff has failed to present evidence to show that the inclusion of unaffiliated voters in the primary election caused her irreparable harm.

Whatever harm Plaintiff's election loss may have caused her, further discussion of the preliminary injunction standard, as it relates to the balancing of the hardships between the parties, reveals that the harm that Defendants will suffer if the May 2, 2000 election results are decertified is greater than any harm to Plaintiff, given the low level of her likelihood of success on the merits as will be discussed herein. At the very least, the decertification of the May 2, 2000 primary for district court judge would mean that Defendants would have to hold new primary elections that excluded unaffiliated voters. This would undoubtedly cause a substantial expense to Defendants. The harm to Defendants would be greater than any harm to Plaintiff, particularly where as here, Plaintiff ultimately will not be able to establish any legal harm as a result of the conduct of the named Defendants in conducting a primary election. The Court finds therefore that in analyzing the balance of harms, Defendants in this instance would face more significant harm.

### C. Plaintiff's Likelihood of Success on the Merits

Because the balance of harms favors Defendants, Plaintiff has a greater burden to show that she is likely to prevail on the merits of her case. *Dart Containerline Co., Ltd.*, 592 F.2d at 750. In support of her contention that she will likely prevail on the merits of her claim, Plaintiff advances two arguments. First, Plaintiff contends that N.C. Gen.Stat. § 163–119 violates her First Amendment right to free association. Second, Plaintiff contends that N.C. Gen.Stat. § 163–119 violates the Equal Protection Clause of the Fourteenth Amendment. The Court will address each of these arguments in turn.

### 1. First Amendment Right of Free Association

It is well-established that the freedom to engage in association for the advancement of beliefs and ideas is a right guaranteed by the First Amendment. *Healy v. James*, 408 U.S. 169, 181, 92 S.Ct. 2338, 33 L.Ed.2d 266, 279 (1972). While the freedom of association is not explicitly set out in the First Amendment, the Supreme Court of the United States has held it to be implicit in the freedoms of speech, assembly, and petition. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514, 523 (1986). The right to exercise freedom of association has been held to include partisan political organizations. *Id.* This means that a political party has the right to identify those people who will be permitted to participate in the organization. *Id.; see also Democratic Party of U.S. v. Wisconsin ex rel. LaFollette*, 450 U.S. 107, 122, 101 S.Ct. 1010, 67 L.Ed.2d 82, 95 (1981) ("political parties may accordingly protect themselves 'from intrusion by those with adverse political principles.'" (quoting *Ray v. Blair*, 343 U.S. 214, 221–222, 72 S.Ct. 654, 96 L.Ed. 894, 900 (1952))). The freedom of association also includes the freedom not to associate. *California Democratic Party v. Jones*, —— U.S. ——, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000) (citing *Wisconsin ex rel. LaFollette*, 450 U.S. at 122, 67 L.Ed.2d at 95; *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623, 104 S.Ct. 3244, 82 L.Ed.2d 462, 474–75 (1984)).

As previously stated, Plaintiff claims that Defendants, in carrying out primaries pursuant to the statute, N.C. Gen.Stat. § 163–119, have violated her constitutional freedom of association. However, the North Carolina General Assembly enacted N.C. Gen.Stat. § 163–119 in an attempt to comply with the Supreme Court's holding in *Tashjian.* In *Tashjian*, the Supreme

Court held that a statute of the State of Connecticut, which prohibited political parties in Connecticut from allowing unaffiliated voters to vote in the Republican Party primaries, unconstitutionally abridged the Connecticut political parties' First Amendment right to freedom of association. *Id.* Therefore, in the wake of *Tashjian,* it was clear that a state could not prohibit a political party from allowing unaffiliated voters to participate in the party's primary elections.

To the extent that N.C. Gen.Stat. § 163–59 [2], standing alone, would have required a closed primary and therefore would have prohibited either political party from allowing unaffiliated voters to vote in their party primaries, the law of North Carolina, in view of *Tashjian,* represented an unconstitutional abridgement of the right of association of North Carolina's political parties. The North Carolina General Assembly, on its own initiative, sought to remedy this potential problem by enacting § 163–119 as a mechanism which made it possible for a political party to choose whether to allow unaffiliated voters to vote in each party's primary.[3]

Plaintiff, however, argues that while N.C. Gen.Stat. § 163–119 may protect the party's right of association, it at the same time violates her individual First Amendment right of freedom of association. Plaintiff therefore contends that she will be able to establish a likelihood of success on the merit in showing that her individual constitutional rights have been violated. Specifically, Plaintiff contends that, notwithstanding the language of N.C.G.S. § 163–59 which, before the amendment of 1987, required closed primaries, Defendants, by way of the mandate of N.C. Gen.Stat. § 163–119, have denied her right as an individual Republican Party member to insist that the Republican Party exclude unaffiliated voters from participating in the primary elections. Plaintiff asserts that she has the individual right to insist that only registered Republicans be allowed to vote to determine the Republican Party's nominees for elected office. (Pl.'s Mem. Supp. Mot. T.R.O. or Prelim. Inj. at 2–3.) Although it seems that Plaintiff's focus should be on the decision made by the Republican Party to allow unaffiliated voters to vote in the Republican primaries, Plaintiff instead

---

**2.** N.C. Gen.Stat. § 163–59 formerly provided the following requirements for any voter wanting to vote in a political party's primary election:

> *§ 163–59. Right to participate or vote in party primary*
> No person shall be entitled to vote or otherwise participate in the primary election of any political party unless he
> (1) Is a registered voter, and
> (2) Has declared and has had recorded on the registration book or record the fact that he affiliates with the political party in whose primary he proposes to vote or participate, and
> (3) Is in good faith a member of that party.

N.C. Gen.Stat. § 163–59 (prior to amendment).

However, on June 18, 1987, the North Carolina General Assembly added the following language to § 163–59:

> Notwithstanding the previous paragraph, any unaffiliated voter who is authorized under G.S. § 163–119 may also vote in the primary if the voter is otherwise eligible to vote in that primary except for subdivisions (2) and (3) of the previous paragraph.

N.C. Gen.Stat. § 163–59 (as amended, ch. 408, 1987 N.C. Adv. Legis. Serv. 211).

**3.** In a more recent case, *California Democratic Party v. Jones,* — U.S. —, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000), the Supreme Court held unconstitutional a California proposition which converted that State's primary election from a closed primary to a blanket primary in which voters could vote for any candidate regardless of the voter's or candidate's party affiliation. In *Jones,* the Court held that a political party had the right to determine who could participate in its primary elections. Thus, in the wake of the Court's holdings in *Tashjian* and *Jones,* it is clear that a state can neither force a political party to open nor to close its primary elections. As it stands now, *Jones* in conjunction with *Tashjian* makes it clear that a political party's right of association gives a party the opportunity to decide who can and cannot vote in its primary, provided no other constitutional barriers are present.

contends that Defendants are the appropriate parties to this lawsuit and not the Republican Party because Defendants, by the mandate of § 163–119, made it possible for the Republican Party to open its primary to unaffiliated voters.

Plaintiff acknowledges that *Tashjian* stands for the principle that a political party cannot be prohibited by a state from determining who may vote in its primary elections. Furthermore, to the extent that § 163–119 allows it, Plaintiff does not dispute that the State Executive Committee for the North Carolina Republican Party has complied with N.C. Gen.Stat. § 163–119 by expressing its intention in 1987 to the State Board of Elections that unaffiliated voters would be allowed to vote in the future primary elections of the North Carolina Republican Party. However, the focus of Plaintiff's argument is that the relevant consideration for First Amendment analysis of N.C. Gen.Stat. § 163–119 is the right of association of individual Republican Party members to chose those people who may participate in electing the party's nominees for political offices. This argument suggests that Plaintiff, individually, and not the State Executive Committee representing the members of the Republican Party, is in the better position to decide who can participate in the party's primary elections. Plaintiff contends that this decision should not be made by the State Executive Committee because it "is not a body democratically chosen by affiliated members of the Republican party," and "[t]hat there … has been no popular party referendum to support action by the State Executive Committee of the Republican party, if any, to permit unaffiliated voters to vote in … the party primaries." (Pl.'s Compl ¶¶ 9, 21.) While Plaintiff alleges that the State Executive Committee's decision to include unaffiliated voters in the party's primary election, through the action of the party's chairman, was made without the consent of the members at large, Plaintiff has not provided any evidence to suggest that the State Executive Committee was not acting as a proper representative for the party's membership when the North Carolina Board of Elections was advised that the party's primary would be open to unaffiliated voters. It appears that Plaintiff is arguing that her objection to an open primary is, by itself, enough to render the May 2, 2000 primary unconstitutional. Plaintiff's argument suggests that the inclusion of the votes of unaffiliated voters over the objection of even one party member violates that party member's associational rights. The Court disagrees.

Plaintiff nevertheless contends that in the context of political parties the only protected associational right is that of the individual party member, and the party unit merely represents its membership in that regard. (Pl.'s Mem. Supp. Mot. T.R.O. at 2.) In support of this proposition, Plaintiff cites *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975). In *Cousins,* the Supreme Court held that a state court violated the Illinois Democratic Party's associational rights by enjoining the party's decision to seat a group of delegates in the 1972 Democratic National Convention. This Court does not read *Cousins* to state, as Plaintiff contends, that the associational rights of an individual member supersede the right of the political party to formulate rules regarding the participation of unaffiliated voters in its primary elections. To the contrary, the *Cousins* Court equated the associational rights of individual party members with the associational rights of the party as a unit in stating that "[t]he National Democratic Party *and its adherents* enjoy a constitutionally protected right of political association." *Cousins,* 419 U.S. at 487, 42 L.Ed.2d at 603 (emphasis added). In the Supreme Court's discussion of associational rights in *Tashjian,* the Court appeared to distinguish between associational rights as they apply to individuals and associational rights as they apply to the political party as a unit. In discussing the application of the freedom of association to the individual, the *Tashjian* Court stated that

"[t]he right to associate with the political party of one's choice is an integral part of [the freedom of association.]" *Tashjian,* 479 U.S. at 214, 93 L.Ed.2d at 523. Therefore, it seems clear that the associational rights of the individual are exercised when the individual decides whether or not to affiliate himself or herself with a political party. However, the Court explained that the associational rights of the party unit are predominate to the extent that "the freedom to join together in furtherance of common political beliefs 'necessarily presupposes the freedom to identify the people who constitute the association.'" *Tashjian,* 479 U.S. at 214, 93 L.Ed.2d at 523–24 (quoting *Democratic Party of United States v. Wisconsin ex rel. LaFollette,* 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82, 95 (1981)). The *Tashjian* Court's reference to the "freedom to identify the people who constitute the association" can only mean the freedom of the majority of the membership at large as a party unit—as opposed to the right of an individual member—to choose the people who will constitute the association. If it were true that each individual member of a political party had the right to make separate decisions in disregard of the party's method of self-governance, the political party would have difficulty functioning as an association. Plaintiff attempts to expand the significance of her claim of an individual right of association based upon the language in *Tashjian* which states that "'[a]ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents.'" *Tashjian,* 479 U.S. at 215, 107 S.Ct. at 548, 93 L.Ed.2d at 524 (citing *Democratic Party of U.S.,* 450 U.S. at 122, 101 S.Ct. at 1019, 67 L.Ed.2d at 95.) Plaintiff contends this statement means that the individual rights in the association are on par with, if not greater than, the right of association of the party itself. The Court views the statement as only suggesting that once an individual has exercised his or her right to associate with a political party, the relevant consideration for First Amendment analysis becomes a concern for the associational rights of the party unit. *See also Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 229, 109 S.Ct. 1013, 1023, 103 L.Ed.2d 271, 286 (1989) (stating that freedom of association encompasses a political party's decisions about the process for electing its leaders). It goes without saying that if the party's associational rights are violated, then of course the rights of the individual member are likewise violated. The Court is aware of no authority for the notion suggested by Plaintiff that her associational rights are greater when compared to the recognized right of association of the group to determine who its members are and who may participate in its primary elections. In view of *Tashjian,* there is simply no basis for finding that N.C. Gen.Stat. § 163–119 is an unconstitutional abridgment of Plaintiff's First Amendment right of free association, particularly where the statute serves to protect the constitutional right of the Republican Party, in this instance, to decide who will participate in its primary elections.@ The Court therefore concludes that Plaintiff is not entitled to a preliminary injunction because there is no likelihood that Plaintiff will be successful on the merits of her case.

### 2. Equal Protection

Plaintiff also argues that she can show a likelihood of success because N.C. Gen. Stat. § 163–119 violates her rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff cites *Hadley v. Junior College Dist.,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970) in support of her contention that the use of § 163–119 to allow the Republican Party's Executive Committee to open the primary election to unaffiliated voters unconstitutionally dilutes her vote. However, as Defendants note, the issue in *Hadley* was whether the "one man, one vote" rule applied in elections for officials of local government—particularly trustees to the board of a district junior college. In the present case,

the election of a governmental official in a general election is not at issue. Rather, Plaintiff's Complaint challenges the validity of the primary election process that is internal to the North Carolina Republican Party. The party's right to conduct its primary in the manner that it believes is in its best interests—including its decision to open the primary to unaffiliated voters—is within the constitutional right of association of the political party. *Tashjian,* 479 U.S. at 214, 107 S.Ct. at 548, 93 L.Ed.2d at 523. Thus, Plaintiff's argument that her vote has been diluted in violation of the Equal Protection Clause is without merit.

### D. Consideration of the Public Interest

The Court notes that the public has a substantial interest in the validity of the electoral process, including a political party's procedure for nominating candidates to represent the party in a general election. With respect to this procedure, the Supreme Court has shown great deference to the First Amendment right of freedom of association as that right is guaranteed to political parties. *See Tashjian,* 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514. In the present case, because the procedure by which the North Carolina Republican Party chose its candidate for District Judge of the 18th District was consistent with the laws of the State of North Carolina and the Constitution of the United States, the Court finds that the public interest is best served by ensuring the integrity of that procedure. Thus, the Court finds that it is in the public interest to deny Plaintiff's Motion for Preliminary Injunction.

### IV. CONCLUSION

For the foregoing reasons, this Court concludes that Plaintiff has failed to sustain her burden of showing that each of the relevant factors—irreparable harm to Plaintiff, harm to Defendant, Plaintiff's likelihood of success on the merits, and the public interest—supports a decision to issue a preliminary injunction in this matter. Therefore, Plaintiff's Motion for Prelimi-

nary Injunction [Document #3] is DENIED in its entirety.