422 F.3d 160
 RICHMOND MEDICAL CENTER FOR WOMEN; William G. Fitzhugh, M.D., on behalf of themselves, their staffs, and their patients, Plaintiffs—Appellees,
v.
David M. HICKS, in his official capacity as Commonwealth Attorney for the City of Richmond; Wade A. Kizer, in his official capacity as Commonwealth Attorney for the County of Henrico, Defendants—Appellants.
Horatio R. Storer Foundation, Incorporated, Amicus Supporting Appellants,
Physicians for Reproductive Choice and Health; Vanessa E. Cullins, Vice President for Medical Affairs, Planned Parenthood Federation of America; Forty-Two Individual Physicians, Amici Supporting Appellees.
 No. 03-1821.
 No. 04-1255.
 United States Court of Appeals, Fourth Circuit.
 September 2, 2005.
 
 Priscilla Joyce Smith, Nan E. Strauss, New York, NY, for Plaintiffs— Appellees.
 Edward Meade Macon, William Eugene Thro, James Christian Stuchell, Judith Williams Jagdmann, Anthony Philip Meredith, Office of the Attorney General of Virginia, Edward Joseph McNelis, III, Rawls & McNelis, PC, Richmond, VA, for Defendants—Appellants.
 James Bopp, Jr., Richard Eugene Coleson, Jeffrey Peter Gallant, Thomas J. Marzen, Bopp, Coleson & Bostrom, Terre Haute, IN, for Amicus Supporting Appellants.
 David Samuel Cohen, Stacey I. Young, Women's Law Project, Philadelphia, PA, for Amici Supporting Appellees.
 PER CURIAM.
 
 ORDER
 I.
 
 1
 Upon a request for a poll of the court on the petition for rehearing en banc, Judges Widener, Niemeyer, and Shedd voted to grant the petition for rehearing en banc. Chief Judge Wilkins, Judges Wilkinson, Luttig, Michael, Motz, Traxler, King, Gregory, and Duncan voted to deny rehearing en banc. Accordingly, the petition for rehearing en banc is denied.
 
 II.
 
 2
 The panel considered the petition for rehearing. Judge Niemeyer voted to grant the petition for rehearing, and Judges Michael and Motz voted to deny the petition for rehearing. Accordingly, the petition for rehearing is denied.
 
 III.
 
 3
 Judge Wilkinson, Judge Luttig, and Judge Michael filed separate opinions concurring in the denial of rehearing en banc. Judge Niemeyer filed a separate opinion dissenting from the denial of rehearing en banc, in which Judge Widener joined. The separate opinions are attached.
 
 IV.
 
 4
 Judge Williams, being disqualified, did not participate in the proceedings with respect to this case.
 
 
 5
 WILKINSON, Circuit Judge, concurring in the denial of rehearing en banc.
 
 
 6
 Whatever one's views on the various issues surrounding abortion, ending the life of an infant at the moment of its birth is a uniquely disturbing act.
 
 
 7
 At the very least, the democratic process should not be precluded from coming to that judgment. We have always relied upon that process to soften the harsh blows of life. The New Deal and Great Society had in common a desire to help those who through no fault of their own found themselves in straitened circumstances. If our democracy can work to enhance equal opportunity in life, should it not also be permitted here to enhance the opportunity for life to begin? I am at a loss to explain how a partially born child can be excluded from the American embrace.
 
 
 8
 Whether a health exception to a partial birth abortion ban is a necessity or a loophole — and the proper scope of such exceptions — strike me as altogether fair and debatable questions, but again, I believe the political process deserves some leeway in arriving at the answers. Our democracy often cools passions by giving them appropriate expression. The partial birth abortion debate will, I fear, be only further inflamed through judicially imposed solutions.
 
 
 9
 The moment a child is brought into the world is supposed to represent the ultimate in human joy. Instead, through methods of partial birth abortion too gruesome to bear repetition here, medical science is employed to bring a child's life to an end. That a right to the "intact D&E/D&X procedure" is now found in no less than our founding document is simply and indescribably sad. The means that so transform the miracle of birth are not something this good land should seek to constitutionalize.
 
 
 10
 * * * * * *
 
 
 11
 We do not write upon a clean slate here. As circuit judges, we are bound to follow the Supreme Court. I can find no fair basis for distinguishing this case from Stenberg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000). For that reason, I vote to deny rehearing en banc.
 
 
 12
 LUTTIG, Circuit Judge, concurring in the denial of rehearing en banc.
 
 
 13
 I vote to deny rehearing en banc in this case for the reasons stated in my concurrence in Richmond Medical Center for Women v. Gilmore, 219 F.3d 376 (4th Cir.2000).
 
 
 14
 MICHAEL, Circuit Judge, concurring in the denial of rehearing en banc.
 
 
 15
 I concur in the court's denial of rehearing en banc. The panel decision, Richmond Medical Center for Women v. Hicks, 409 F.3d 619 (2005), holds that the Commonwealth of Virginia's latest statute criminalizing "partial birth abortion" is unconstitutional on its face because it lacks an exception to protect a woman's health. The decision is mandated by Stenberg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000), which holds that any statute banning "partial birth abortion," specifically the intact D&E/D&X procedure, must contain a health exception in order to be constitutional.
 
 
 16
 In Carhart the Supreme Court, in striking down a Nebraska ban on "partial birth abortion," based its holding on longstanding precedent and a thoroughgoing analysis of all available medical information. The Court began by recognizing the established standard from Roe v. Wade, 410 U.S. 113, 164-65, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), a standard reiterated by the plurality opinion in Planned Parenthood v. Casey, 505 U.S. 833, 879, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992): "subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." Carhart, 530 U.S. at 930, 120 S.Ct. 2597 (internal quotation marks and citation omitted). The Carhart Court applied this standard by examining medical opinion and information regarding the intact D&E/D&X procedure from a broad range of sources. The Court drew both from the record and sources outside the record, including medical textbooks and journals covering abortion, the factual records developed in other "partial birth abortion" cases, and amicus briefs (with citations to medical authority) submitted by medical organizations. Based on all of this information, the Court determined that substantial medical authority supports the proposition that the intact D&E/D&X procedure offers significant health and safety advantages in certain circumstances. See id. at 934-38, 120 S.Ct. 2597. This determination led the Carhart Court to establish as a per se constitutional rule the health exception requirement for any statute outlawing "partial birth abortion." Id. at 938, 120 S.Ct. 2597 (holding that "a statute that altogether forbids [the intact D&E/]D&X" procedure necessarily "creates a significant health risk" and "consequently must contain a health exception"). As Virginia acknowledges, its statute criminalizes "the D&X procedure, or what is sometimes referred to as an `intact D&E.'" Reply Br. of Appellants at 2; see also id. at 3 (identifying "[t]he central issue in this case" as "whether [Virginia] may prevent use of the D&X or intact D&E" procedure). Because the Virginia statute lacks a health exception, it is unconstitutional on its face. See Carhart, 530 U.S. at 938, 120 S.Ct. 2597; see also Sabri v. United States, 541 U.S. 600, 124 S.Ct. 1941, 1948-49, 158 L.Ed.2d 891 (2004) (recognizing the validity of facial challenges to statutes regulating abortion procedures).
 
 
 17
 NIEMEYER, Circuit Judge, dissenting from the denial of Virginia's petition to rehear this case en banc.
 
 
 18
 In the aftermath of the Supreme Court's decision in Stenberg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000) (holding unconstitutionally overbroad a Nebraska partial-birth abortion statute), Virginia enacted a narrowly focused law in 2003, making it a criminal offense "to kill a human infant who has been born alive, but who has not been completely extracted or expelled from its mother." Va.Code Ann. § 18.2-71.1(B). The statute explicitly excludes numerous abortion methods from its coverage and applies only to protect a live fetus that has been delivered halfway into the world — i.e., either "the infant's entire head is outside the body of the mother" or, for a breech delivery, "any part of the infant's trunk past the navel is outside the body of the mother." Id. § 18.2-71.1(D). Virginia found it unnecessary, based on the narrow proscriptions of its statute, to include an exception for the health of the mother because the available medical data revealed that protecting a live fetus that is delivered at least halfway from its mother does not put the mother's health at risk.
 
 
 19
 Without analysis of the statute's application to the facts in the record, the panel majority struck down Virginia's statute as unconstitutional under Carhart. Rather than analyze the statute's reach and the record, the majority held simply that Carhart created a per se constitutional rule that any partial-birth abortion statute must contain a health exception regardless of whether the facts relevant to the statute's prohibition demonstrate a need for one. See Richmond Med. Ctr. for Women v. Hicks, 409 F.3d 619, 624-26 (4th Cir.2005).
 
 
 20
 In addition, in striking down Virginia's statute on a facial challenge, the majority disregarded the standard for reviewing facial challenges defined in United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), and ignored this circuit's standard for facial challenges of abortion laws, see Greenville Women's Clinic v. Comm'r, 317 F.3d 357, 362 (4th Cir.2002); Greenville Women's Clinic v. Bryant, 222 F.3d 157, 163-65 (4th Cir.2000); Manning v. Hunt, 119 F.3d 254, 268-69 (4th Cir.1997).
 
 
 21
 These two issues — (1) whether Carhart creates a per se constitutional rule and (2) whether facial challenges to abortion statues are governed by United States v. Salerno — are questions of exceptional importance to the people of Virginia and to our jurisprudence and so qualify this case for en banc review. See Fed. R.App. P. 35(a)(2). I therefore take exception to our decision not to rehear this case en banc.
 
 
 22
 Our court's continuing rejection of Virginia's multiple efforts to legislate for the protection of fetuses, see Richmond Med. Ctr. for Women v. Gilmore, 224 F.3d 337 (4th Cir.2000); Richmond Med. Ctr. for Women v. Hicks, 409 F.3d 619 (4th Cir.2005), has created an unnecessary tension between federal law and state sovereign authority. As I demonstrated in my separate opinion, dissenting from the majority, see Richmond Med. Ctr. for Women v. Hicks, 409 F.3d at 630-34 (Niemeyer, J., dissenting), the Virginia statute before us now, when analyzed against the record in this case, does not conflict with the U.S. Constitution as interpreted in Carhart. The Carhart holding relates to a totally different statutory proscription in the context of a totally different factual record.
 
 
 23
 The statute at issue in Carhart provided that "`[n]o partial birth abortion shall be performed in this state,'" except "`to save the life of the mother.'" Carhart, 530 U.S. at 921, 120 S.Ct. 2597 (quoting Neb.Rev.Stat. § 28-328(1)). The Supreme Court read the Nebraska statute, which regulated only the methods of performing abortions, to prohibit a broad array of abortion procedures. The Court noted that the statute did not "directly further an interest `in the potentiality of human life' by saving the fetus in question from destruction." Id. at 930, 120 S.Ct. 2597. Unlike the Nebraska statute, the Virginia statute before us protects the fetus itself — the "human infant who has been born alive, but who has not been completely extracted or expelled from its mother," Va.Code Ann. § 18.2-71.1(B) — by prohibiting its destruction when it has been delivered at least halfway into the world. The Virginia statute also excepts from its coverage various abortion procedures prohibited by the Nebraska statute.
 
 
 24
 In addition, the record presented in Carhart was materially different from that before us. In Carhart, the Nebraska statute was found to prohibit a broad range of abortion procedures employed by doctors at various stages of fetal growth in various conditions, leaving the mother with no alternative when her health was at risk. The Supreme Court observed that the record demonstrated such risk to be "highly plausible." Carhart, 530 U.S. at 936, 120 S.Ct. 2597. The Court accordingly concluded that "[g]iven these medically related evidentiary circumstances, we believe the law requires a health exception." Id. at 937, 120 S.Ct. 2597.
 
 
 25
 No similar evidentiary circumstances can be found in the record here. The plaintiff presented no medical evidence to prove that the prohibition in Virginia's statute creates a risk to the mother's health. The Virginia statute protects the fetus in two limited scenarios: (1) when it is delivered headfirst into the vagina or beyond and (2) when it is delivered in breech position and the fetus is delivered halfway into the vagina. As to the first scenario, no evidence exists in the record to suggest that a prohibition against destroying the fetus creates any risk to the mother's health. As to the second scenario, all of Virginia's evidence and all of the written medical evidence indicate that preserving the fetus presents no risk to the mother's health. To the contrary, when a fetus is delivered in breech position, the medical evidence shows that the fetus can be safely delivered without deliberately destroying it. Dr. Fitzhugh did assert in testimony that if the fetal head becomes stuck — a rare occurrence even according to him — the life of the mother is placed at risk. But the Virginia statute provides a specific exception for such a circumstance. See Va.Code Ann. § 18.2-71.1(E) (permitting destruction of the fetus "to prevent the death of the mother").
 
 
 26
 In short, only by creating a per se constitutional rule and adopting a liberal standard for evaluating facial challenges of statutes was the majority able to strike down the Virginia statute. Neither action was required by established law. It is clear for all to read that we are doing not what is required by law, as I have amplified in my earlier opinion, see 409 F.3d at 645-46 (Niemeyer, J., dissenting), but what we will. And in doing so, we have unnecessarily extended the holding of Carhart.
 
 
 27
 I deeply regret that we do not find these issues sufficiently important to consider them as a court en banc, and I dissent from our refusal to do so.
 
 
 28
 Judge WIDENER has joined in this opinion.